HENRY W. BENHAM & another *vs.* THOMAS J. DUNBAR
& another.

On an issue of the value of a lot of lowland and flats on an island in Boston harbor, it is no ground of exception that evidence was admitted of the price of lands sold at different times, from eight years to one year before, on islands and headlands in the harbor, from half a mile to six miles distant; in the absence of evidence of more recent sales, or of any great difference of the uses to which these islands and headlands were appropriated; although the island on which the lot in question was situated was much larger than the others, and had readier means of communication with the city, and the lot had a deposit of sand thereon.

PETITION under the Sts. of 1868, *c.* 292, and 1869, *c.* 7, by Henry W. Benham and John G. Foster, agents of the United States, for a jury to assess the value of the tract of lowland and flats on Long Island in Boston harbor, consent to the purchase of which by the United States was granted by the first named statute. Hearing by the jury in the superior court at April term 1869, before *Brigham*, C. J., who allowed the following bill of exceptions:

" The tract of lowland and flats in question is on Long Island, one of the islands in Boston harbor, and distant from Long Wharf from five to six miles; the tract of lowland being an isthmus connecting the east head of Long Island with the main portion thereof, and containing ten acres, the flats thereto appurtenant being four acres and a quarter. The whole island contains 250 acres, all of which, except the east head, embracing about 25 acres, and some twenty small building lots, none of them exceeding a quarter of an acre in extent, were the property of the respondents. There was evidence tending to show that there was, upon the part of the island belonging to the respondents, one hotel, built in 1851 and 1852, and recently repaired; one small cottage, to be used for a hotel; two cottages just repaired; and several other small buildings, of but trifling value. There was also a wharf, which had cost some $6000, built in 1851 and 1852, and recently largely repaired. There was evidence tending to show that the respondents, who became the owners in the fall of 1867, had expended, in improvements in the island,

$30,000, and that they had built a steamboat for the purpose of running between Boston and this island, and other places, at a cost of $30,000. It was admitted by both parties that the tract of lowland was utterly worthless for agricultural uses. Under proper instructions from the judge, and before any testimony was offered, the jury were taken to the premises for a view thereof. A chart of Boston harbor, with all the islands therein, and mainlands bordering thereon, with the depths of water around all the said islands and headlands, was admitted by both parties as evidence of the location, soundings, &c., of the water, and lands therein designated.

" The respondents introduced testimony tending to show that the property they claimed had, within two years, passed into their hands as trustees of the Boston Bay Steamboat & Land Company; that the object this company had in view was to enhance the value of this property by creating a demand for it for building purposes as a place of resort upon the seashore; that, to accomplish this, they had, in addition to the steps taken as enumerated, contracted for bathing-houses, which they were about to erect upon the ten acres of lowland in question ; that the said ten acres were of value to the whole island, as affording the best place at the least expense to build a wharf to deep water, and were also valuable because there was upon them a large deposit of sand suitable for building purposes, and because they furnished desirable fishing stations, for which they were in demand, and for which purpose the respondents had been offered $10,000.

" The petitioners then introduced testimony tending to show that the island was of value only for its agricultural uses; and that all previous efforts to make the island of value as a place of resort upon the seashore had proved failures. Without objection from the respondents, the petitioners also introduced testimony to show that the whole of the said 250 acres was leased in 1847 for about $550 per annum for farming purposes, with the privilege of selling ballast; that in 1865 the same property was leased for $500 per annum, without the privilege of selling ballast, and was used for cultivation and grazing; that the hote

upon the property, which in 1851 and 1852 cost $35,000, was sold in 1860 and 1865 for $12,000, and paid for part in cash and part in stock of the incorporated company to whom the premises then belonged; that two efforts were made, in 1850 and 1860, to sell lands upon the island at auction, one of which was partially successful to a small amount, the other a failure; that in 1867 about 220 acres of the island, including the wharf designated, were sold for $12,000; that, from 1851 to 1867, previous companies had attempted to make the premises of value for building purposes, but had failed; that at the present time there were but three or four houses on the island, these being, except the hotel, cottages of but little value; that the ten acres of lowland, for fishing purposes, were of inferior quality to other islands situated from three to six miles further from Long Wharf; that the deepest water was not off the ten acres as alleged; and that the sand found there was not the best for building purposes, and not such as the engineers would use for works to be erected there.

" The petitioners further offered the following testimony of actual sales of land in Boston harbor, and at the following dates: Apple Island: purchased by the city of Boston in 1867, containing nine and a half acres, situated in Boston harbor, two miles and three fourths northwest of the eastern end of Long Island. Peddick's Island: eight acres sold thereon in 1869; situated in Boston harbor, two and a half miles from Long Island. Gallop's Island: purchased by the city of Boston in 1860; containing sixteen acres, situated in Boston harbor, less than half a mile from Long Island; but no buildings had been erected thereon besides fishing and farm buildings, and they had no regular communication with Boston. The petitioners having introduced, without objection, testimony tending to show that these islands were similar in character and possessed the same agricultural value as the upland on Long Island, and were similarly situated thereto, asked of a witness the prices the city paid for Apple Island and Gallop's Island. The respondents objected, but the presiding judge ruled that the question was proper, and the answer admissible; and the question was put and answered.

" The petitioners also introduced, without objection from the respondents, testimony of recent sales of lands upon the points and headlands of the shore as follows: At Point Allerton, four miles from the said ten acres, in 1868; Sagamore Head, six miles therefrom, land sold in 1867; Strawberry Hill, four miles therefrom, lands sold in 1867; at Hull, two and three quarters miles therefrom, lands sold in 1868; also, of sales of common lands between Point Allerton and Hull, sold in 1865. They also introduced evidence tending to show that, with the exception of the common lands between Point Allerton and Hull, these lands were of the same agricultural value in soil as the upland on Long Island, and were similarly situated as to the sea, and that these common lands were of precisely the same character as the ten acres of the respondents, and similarly situated in relation to the uplands; but that none of the other islands had any but fishing or farm buildings on them, or regular communication with Boston. The petitioners then asked as to the prices paid for the lands. The respondents objected. But the presiding judge ruled that the questions were proper; and they were put and answered.

" The jury found the value of the fee of the tract of lowland and flats to be $2850; and the respondents alleged exceptions."

*H. W. Paine & C. S. Lincoln,* for the respondents.

*G. H. Gordon,* for the petitioners.

COLT, J. Much must be left to the discretion of the judge who presides at the trial, in determining whether the lands, sales of which were admitted in evidence, were so similar in situation, and adaptation to profitable occupation, and the sales of them so recent, as to make such sales evidence proper to be submitted to the jury.

It certainly does not appear from the facts stated in these exceptions, that the lands upon other islands and headlands in Boston harbor were at such distances, or devoted to such dissimilar uses, or that the sales testified of were so remote in point of time, that the evidence became irrelevant or immaterial to the issue. It may be that there were no sales more recent to be shown. The rule must vary with the circumstances of each

case. If the value of a town lot was in question, it is plain that the evidence should be confined to sales of comparatively recent date and of land in the near vicinity. If it was wild land, in a thinly settled part of the country, a more liberal rule would be applicable. Without some further evidence, we cannot suppose that the changes in the title to real estate in the islands and headlands of the harbor are so frequent, or the difference in situation and value so great, as to render the evidence here objected to inadmissible. *Paine* v. *Boston,* 4 Allen, 168. *Boston & Worcester Railroad Co.* v. *Old Colony & Fall River Railroad Co.* 3 Allen, 142.                     *Exceptions overruled.*