## WILLIAM MARTIN v. FRANKLIN FIRE INSURANCE COMPANY.

On an issue whether a misdescription of insured premises caused the insurance to be effected at a lower premium than would otherwise have been charged, the company's agent, through whom the policy was issued, was permitted to swear to his opinion as to the rate at which he could have procured insurance of the premises, as they were, from other companies, and his knowledge as to the rate actually charged by other companies for insurance of buildings of similar character.   *Held*—That the evidence was admissible, in the discretion of the trial judge.

In case.   On rule to show cause.

Argued at November Term, 1879, before BEASLEY, CHIEF JUSTICE, and Justices DALRIMPLE, VAN SYCKEL and DIXON.

For the defendant, in behalf of the rule, *F. Kingman.*

*Contra, J. B. Vredenburgh* and *I. W. Scudder.*

The opinion of the court was delivered by

DIXON, J.   A decision in this case, in the Court of Errors, is reported in 11 *Vroom* 568, where a statement of the material facts may be found.

After the reversal in that court, the cause was tried in the Hudson Circuit, and the plaintiff again obtained a verdict, which the defendant now seeks to set aside.

The company's sole objection is directed against the admission, at that trial, of evidence concerning the rates of insurance in other companies than the defendant, for the purpose of showing that the misdescription of the insured premises did not avoid the policy, under the clause which provides, "if the assured shall cause the buildings to be described in this policy, otherwise than as they really are, so that they be charged at a lower premium *than is herein proposed,* this policy shall be of no force."

In the Court of Errors, it was held that there was a material misdescription of the property insured, but that such misdescription would not avoid the policy unless it had "been operative to cause the insurance to be effected at a lower premium *than it would otherwise be subject to,*" and that, whether it had had that effect, was a question for the jury.

It appeared, at the trial, that the description was prepared by the company's agent at Jersey city; that he was fully acquainted with the character of the risk as it really was; that he fixed the rate of premium, and recommended to the company the issuance of the policy, and it was accordingly issued through him; that the rates of insurance upon buildings of the same class were not at all uniform, and that the company depended entirely, or to a very great extent, on the judgment of the agent, for the fixing of the premium. In this aspect of the case, the plaintiff was permitted to ask of this agent what were the usual rates for such a house as the plaintiff kept, about the time the policy was issued, and what he knew as to the actual rates charged, at that time, by other companies, upon designated buildings regarded as of the same class, *i. e.,* hotels. His answers were to the effect that he could have insured the plaintiff's building at the policy rate, in twenty or thirty other companies, and that the rates charged for the buildings specifically inquired about, were somewhat higher than that mentioned in the policy.

This testimony is not of a character to require the court to disturb the verdict.

The subject for investigation was, indeed, not whether other insurers could have assumed the risk at the policy rate, but whether the defendant would have demanded a higher premium upon an accurate description of the building insured. It was, however, plain that, even if such a description had been forwarded to the company's managers, still, they would have relied upon this agent to settle the rate, unless they had come to distrust either his judgment or his honesty; and hence the point of inquiry was whether calling the property a hotel or tavern, instead of a dwelling and boarding-house, would have led them to such distrust. As elucidating that, the usual or unusual character of the insurance of a hotel, at the policy rate, was relevant, for, to show that such an insurance was common, in the practice or experience of other persons engaged in the same business as the defendant's managers, would render probable an inference that it was not uncommon in theirs, and would not have excited any disapproval. There was no reason to suppose that the defendant's affairs were conducted in so exceptional a manner as to make the frequent incidents of insurance business surprising to its officers.

The testimony admitted was akin to the evidence of the value of land, afforded by proving sales of other similar land in the neighborhood. This sort of evidence has often been received. *Somerville and Easton R. R. Co.* ads. *Doughty*, 2 *Zab.* 495; *Benham* v. *Dunbar*, 103 *Mass.* 365.

While such inquiries may tend to widen the range of investigation, which it is generally wise to restrain closely to the issue, yet, as no precise limit to relevancy can be laid down, much trust must be reposed in the discretion of the trial judge, and that, we think, in this case, was not abused.

Let the rule be discharged.