IN THE MATTER OF THE PETITION OF THE NEW YORK,
LACKAWANNA AND WESTERN RAILWAY COM-
PANY, APPELLANT, FOR THE APPOINTMENT OF COMMISSIONERS
TO APPRAISE CERTAIN LANDS OF HARRIET A. BENNETT
AND OTHERS, RESPONDENTS.

*Taking of land by a railroad company — rule by which the property is to be valued —*
*agreement between an owner and the company for a sale of the land and for the*
*transfer of other interests therein at a price to be fixed by commissioners named by*
*them — in such a case the court cannot appoint new commissioners on reversing*
*the report of those named by the parties.*

The petitioner being desirous of acquiring the title to certain real estate, for the
purpose of erecting thereon trestles and warehouses for the transfer and delivery
of freight, entered into negotiations with the owners thereof, which resulted in
the making of a written agreement for the purchase and sale of the property.
The agreement provided that the petitioner should institute proceedings under
the general railroad acts to ascertain the value of the premises and the com-
pensation to be paid; that three persons, named therein, should be appointed
commissioners " to ascertain and determine the compensation which ought justly
to be made by the company to the party or parties owning or interested in the
said property, and the decision of the majority of them shall be binding upon
both parties as the decision of all.  It being understood  * * * that said
commissioners shall be governed in estimating the said valuation and compen-
sation by the rules of law applicable to proceedings under said statutes (except
as they may be modified by this agreement) * * * said commissioners shall
take into consideration the capability of the premises and property for any use
whatever; and they shall determine such compensation without delay and
upon their own knowledge and information, as well as upon such evidence as
may be produced before them; * * * no damage shall be allowed because
of injury to the Bennett elevator property, or any adjoining or adjacent
premises or property or any compensation allowed for anything except the
actual value of the premises or property."  It further provided "that all rights
of appeal given by law shall be reserved to either party."

The premises to be taken were known as the Union elevator property, and they
adjoined what was known as the Bennett elevator property, all fronting on
Buffalo creek.  The contract contained agreements for the use of the dock.
front, and for connections to be made by the railroad company with the
Bennett elevator, and for furnishing free access thereto; and provided that
upon the payment of the purchase price the railroad company was to receive
a deed of the premises, containing covenants of seizin and quiet enjoyment,
and transferring certain rights of the grantor in an adjoining basin and alley.
In proceedings instituted under the general railroad act the three persons
named as commissioners in the agreement were appointed to appraise and

ascertain the damages, and from their report, fixing the compensation at $469,375, this appeal was taken.

*Held,* that the provision in the agreement, authorizing the commissioners to take into consideration the capability of the premises and property for any use whatever, was only declaratory of the rule which applies to such cases, and that the compensation must be limited to the then market value of the property for any legitimate uses to which it could be applied.

That as it appeared from the testimony taken that the commissioners had been influenced in fixing the amount of the compensation by estimating the amount of income which the property would yield in case it should be enlarged, and in case additional connecting railroad facilities were furnished, and pro-vided an agreement for mutual protection against competition existing between the owners of elevators at that place should continue in force, that they had adopted an erroneous principle of valuation, and that their award should be set aside.

That, as the parties had agreed upon the persons who were to determine the com-pensation by the agreement made prior to the application to the court, and as by that agreement interests were to be transferred, protected and preserved, which could not arise or be considered in proceedings instituted under the statutes and without regard to the agreement, the court had no power to change the commissioners and appoint new ones, and that the matter must be sent back to those named by the parties for a rehearing. (HAIGHT, J., dissent-ing, holding that the court had power to appoint new commissioners.)

APPEAL from an appraisal and a report of commissioners appointed in this proceeding, and from the order of confirmation made by the Erie Special Term.

This is a proceeding on the part of the petitioner to acquire land situate in the city of Buffalo for the purpose of the erection of trestles and warehouses for the transfer and delivery of freight from and to the petitioner's railway. Negotiation between the parties resulted in a written contract made between the company and the respondents Bennett, whereby the company agreed to purchase, and they to sell the premises in question. And the company agreed to take proceedings as provided by chapter 140, Laws 1850, as amended, and by any other acts supplementary thereto, in this court, for the purpose of ascertaining the value of the premises and the compensation which should be paid for them. It was also "agreed that in said proceedings Nelson K. Hopkins, Robert Dunbar and Brigham Clark, shall be appointed commissioners to ascertain and determine the compensation which ought justly to be made by the company to the party or parties owning or interested in the said property, and the decision of the majority of them shall be binding upon both

parties as the decision of all.  It being understood   *   *   *   that said commissioners shall be governed in estimating the said valuation and compensation by the rules of law applicable to proceedings under said statutes (except as they may be modified by this agreement),   *   *   *   said commissioners shall take into consideration the capability of the premises and property for any use whatever, and that they shall determine such compensation without delay and upon their own knowledge and information, as well as upon such evidence as may be produced before them,   *   *   *   no damage shall be allowed because of injury to the Bennett elevator property, or any adjoining or adjacent premises or property, or any compensation allowed for anything except the actual value of the premises or property."

The premises in question were known as the Union elevator property, and adjoining it on the east is the Bennett elevator property, all fronting on Buffalo creek; and it was provided by the contract that each of the respective owners of those properties should have the right with boats and vessels engaged in commerce to overlap the docks of the other, but that the Bennett elevator should have priority in that respect, except as against vessels first arriving and actually engaged in loading or unloading coal from and to the coal shutes of the Union elevated dock until such loading or unloading was completed, and that the commissioners should take into consideration such rights to be enjoyed by the Union elevator property and the burden to which it will be subjected by them.  It was also agreed that the company should within thirty days make proper connection between the Bennett elevator and the main tracks of its road so as to give the elevator good railroad connection with the petitioner's railroad with suitable approaches for receiving and shipping grain to and from the elevator, and to furnish it such connection as it may from time to time have with the tracks of the New York Central and Hudson River Railroad Company in Erie street, and to allow free ingress and egress over its tracks connected with those of that company; that the petitioner take grain of the Bennett elevator on the usual terms, and that either party may after May 1, 1884, terminate those railroad connections on six months' notice, and until that day the Bennett elevator shall have the preference of all grain of the boats running in connection with

the petitioner's road at established rates; but if notice be given by it, and the business be taken away from the elevator, then the petitioner will furnish tracks of its road so as to connect the Bennett elevator with the tracks of the New York Central and Hudson River Railroad in Erie street, the company to maintain a crossing for wagons and teams for the benefit of the elevator at a place specified. That on the payment of the purchase-money Harriet A. Bennett, the owner, will execute and deliver to the company a deed of the premises in question with covenants of seizin and for quiet enjoyment; that the respondents Bennett will then assign to the company a certain grant made by the common council of the city of Buffalo, so far as it relates to Dart Basin alley, and all their rights to that alley; also all their rights of property in certain lands in and adjoining Evans' ship canal and described in a petition of the company for appraisement. The contract also provided "that all rights of appeal given by law shall be reserved to either party."

After making this contract the company took proceedings under the statute for the appointment of commissioners and an appraisal of the value of the premises, and upon its petition, in the usual form, the persons designated as such in the contract were appointed by order of the court. After hearing the proofs two of the commissioners made a report, in which the other one did not join, appraising the value of the premises and the amount of compensation to be paid by the petitioner at $469,375, which report having been affirmed this appeal was taken.

*John G. Milburn*, for the appellant.

*E. C. Sprague*, for the respondents.

BRADLEY, J.:

Some peculiarity is given to this proceeding by the contract made by the parties, and in what respect and to what extent it has a bearing upon any question which the case presents will be considered. The important proposition has relation to the determination by the commission of the amount that the petitioner should pay as compensation or as the purchase-price of the property.

The premises are 171½ feet in length fronting on Buffalo creek, and about 120 feet in depth, extending back to Joy street in the

city of Buffalo. By their supplemental report, which they were required by the order of the court to make, the two commissioners say that from the testimony of witnesses in whose evidence they had confidence, it was apparent that the land was fairly of the value of $410,000, and the buildings on it $60,000; making the total of $470,000. This appraisal gave as the value of the land, exclusive of the structures on it, nearly $2,400 per lineal foot.

The difference in value, as given by the opinions of the witnesses, is so great as to invite inquiry into the basis upon which their estimates were made. The witnesses, including Mr. Bennett on the part of the respondents, state the value of the land at from $2,000 to $3,000 per foot, and the Union elevator structures from $60,000 to $75,000. And those on the part of the appellant put the value of the land at from $300 to $450 per foot and the elevator structures at from $25,000 to $27,000; thus making a difference in estimates of value of the entire property of about a half million of dollars. And when compared with other sales of property in that locality before then, and then recently made so far as the same appeared, the value as appraised by the commission was exceptionally large, and so large as to evince that circumstances had given a sudden rise in values of property there, or that the method of estimate was peculiar to the property in question.

This property is well and favorably located for commercial purposes. It is near the mouth of the creek. The water opposite has good width so as to enable vessels to turn around, and because it is so near the mouth of the creek, vessels can with greater facility approach the dock, load, unload and depart, than farther up the creek, where there is liability to interruption and delay from other craft. These are some of the considerations applied by the witnesses to this property to appreciate its value, which are said not to be applicable to some other properties on the creek in that vicinity. But it is difficult to account for this difference in value, given by men of intelligence and judgment as the witnesses appear to be, except by assuming that they adopted radically different theories of estimate. The respondents are entitled to be allowed the fair market value of the property, and that is the basis upon which the estimate should be made and allowed by the witnesses and the commission. (*In re William and Anthony Streets*, 19 Wend., 678,

690; *T. and B. R. R. Co.* v. *Lee*, 13 Barb., 169; *Black River, etc., R. R. Co.* v. *Barnard*, 9 Hun, 104; *In re N. Y., L. and W. Ry. Co.* v. *Arnot*, 27 id., 151; *N. Y. W. S. and B. Ry. Co.* v *Dudleston*, 29 id., 609.) And to aid in ascertaining such value recent sales of property of like character and situation may be shown. (*Shattuck* v. *Stoneham Branch R. R. Co.*, 6 Allen, 115; *Benham* v. *Dunbar*, 103 Mass., 365; *Green* v. *Fall River*, 113 id., 262; *Chandler* v. *J. F. Acqueduct*, 122 id., 305, 306; *Gardner* v. *Brookline*, 127 id., 358, 363.) Such value is to have relation to the time in question and is not confined to any particular use, but the then market value may be given as for any use for which the property is the most advantageously adapted or may be used. (*Boom Co.* v. *Patterson*, 98 U. S. [8 Otto], 403; *Dickenson* v. *Fitchburg*, 13 Gray, 546; *College Point* v. *Dennett*, 5 T. & C., 217; *In re N. Y. C. and H. R. R. R. Co.*, 6 Hun, 149, 154; *N. Y., L. and W. Ry. Co.* v. *Haskin*, 29 Hun, 1.)

The provisions of the contract that the commissioners should take into consideration the capability of the premises and property for any use whatever, and that no compensation shall be allowed for anything except their actual value, are only declaratory of the rule which the law applies to such cases and limits that compensation to the then market value for any legitimate purpose for which the property is adapted. And such estimates of value must be made on a basis reliable in view of existing conditions, and not on speculations of future developments and property relations. (*Burt* v. *Wigglesworth*, 117 Mass., 302; *In re N. Y., L. and W. Ry. Co.* v. *Arnot*, 27 Hun, 151.)

In view of the power existing in the sovereignty to give the right to take private property for public uses, it may be said that individuals hold their property subject to the exercise of that power. (*Matter of Furman street*, 17 Wend., 669; 13 Barb., 171, *supra*.) It is not the policy of the law to make the taking of property for such purposes a matter of profit to the owner, nor is it done for his benefit (*B. R., etc., R. R. Co.* v. *Barnard*, 9 Hun, 104, 106), but to give him full compensation to be measured upon a proper basis for the injury occasioned to him, which does not entitle him to anything for the benefit to the corporation taking it as distinguished from such injury to him. (*Black River, etc., R. R. Co.*

v. *Barnard, supra ; In re Boston, etc., R. R. Co.* v. *T. and B. R. R. Co.,* 22 Hun, 176, 179.)

The question whether or not erroneous principles were applied in making the award may be indicated somewhat by the testimony. By that of the witnesses making the higher estimates it appears that their opinions of value were based largely upon the earnings which under certain assumed conditions might in their judgment be made with the property. It appears that there are thirty-six or thirty-eight elevators at Buffalo of various capacity ; that the Union elevator has that of 50,000 or 60,000 bushels of grain, which is comparatively small ; that it has not for many years done much business, and that from one-third to one-half of all the elevators are idle, but they have a revenue from the earnings of those in operation, which arises out of a combination under the management of an association known as the Western Elevator Company, by which all elevators in the association have awarded to them shares respectively according to their capacity and business facilities.

The Bennett and Union elevators together had an award of forty shares, of which the latter was treated by Mr. Bennett as representing fifteen, said to be worth $1,000 each in 1883. This arrangement is consummated through this association to escape competition and make the elevator business more profitable than it otherwise would be. The respondents proceeded to prove, subject to the objections and exceptions of the appellant, the amounts earned annually by the first-class elevators of the city, and that with the requisite expenditure, the capacity of the Union elevator could be so increased as to produce a profitable (stated) income on the amount of the expenditure, and their estimated value of the premises for elevator purposes, and that by operating it in connection with the Bennett elevator by the improved means of self-trimming spouts and two legs, one of them portable, the quantity of grain which could be handled in a single season might be increased to 25,000,000 bushels ; that the respondents Bennett had an offer from Vanderbilt to give some connecting facilities with the New York Central, etc., railroad ; and that although this property was not of itself sufficient in extent for a coal yard, it may be valuable as such in connection with the coal shutes on adjacent property of a railroad company.

One of the witnesses who estimated value at $2,000 per foot for

the land, says : " I have no particular knowledge of market prices of property, but base it on what I think it might be made to pay by improving it as an elevator." Another one, giving like estimate of value, says it would not be worth that detached from the adjacent land before referred to of the railroad company, that " that is what makes this property valuable." And another adds that if it were not for the association, which protects against competition, the value of elevator property would be less. The references made to the earnings of other elevators, first-class elevators, with a view of proving the income of the property in question, after its capacity is increased by the expenditure of the necessary amount for that purpose, is not a reliable or approved basis for an estimate of value, but it becomes matter of speculation, dependent on too many circumstances, to be entitled to consideration as evidence of value. And the same may be said of contemplated relation to and operation with other property and projects in view, for connecting facilities with channels of transportation not within the control of the owner of the property in question. (*Burt* v. *Wigglesworth*, 117 Mass., 302, 306 ; *Gardner* v. *Brookline*, 127 id., 358, 362 ; *In re William, etc., Streets*, 19 Wend., 690 ; *N. Y., L. and W. Ry. Co.* v. *Arnot*, 27 Hun, 149, 154.)

It appears that some of the elevators are under the control and management of large railroad corporations, which bring to their respective elevators all the business they can control. The fact that some of these earn $100,000 and upwards each, during one season, furnishes no very reliable information that another of like capacity would have the same favorable circumstances to supply it with business. Then the increased income that is dependent upon the aid of the Western Elevator Company in relieving against competition, is not within the control of the respondents, and its continuance cannot be assured. The income depends upon the extent of business done, and that is again dependent on the existence of the business to be done, and so far as relations with others in respect to the use of property or means and facilities which may furnish or increase business at a particular locality are contemplated, they are dependent on the consummation and then on continuance, and when an attempt is made to found an estimate of value, based on income upon those conditions, too many

contingencies intervene to make such opinions evidence, or to furnish any legitimate aid to the tribunal required to determine the value of property. It cannot be seen that this character of testimony did not have its influence with the commission, if it did not entirely control their action in reaching a result. The commissioners were required to view the premises, and were at liberty to exercise their judgment, guided by correct principles, in ascertaining the value. The provision of the contract, that they shall determine the compensation " upon their own knowledge and information, as well as upon such evidence as may be produced before them," neither requires or permits anything more than the law in effect directs and authorizes. (Laws 1850, chap. 140, § 16, as amended; Laws 1864, chap. 582; *In re Boston Road*, 27 Hun, 409.) And although in their supplemental report the commissioners say that they did not rely *entirely* upon the evidence but upon their own knowledge they add, that after considering all the evidence it was apparent to them from the testimony of the witnesses in whose evidence they had confidence the property was fairly of the value of $470,000. Nor does the clause in the contract that the " commissioners shall take into consideration the capability of the premises and property for any use whatever " enlarge the rule which the law applies in such cases. (*Boom Co.* v. *Patterson*, 98 U. S., 403, and other authorities before cited.)

In view of all the testimony it is difficult to escape the conclusion that the commissioners reached their result by the application of erroneous principles to the appraisal of value of the property in question, and that the amount of compensation awarded by their report was by that means increased considerably in excess of the fair market value of the property. The contract of 4th of May, 1883, fixed the rights of the parties to it as vendor and vendee, except only so far as related to the purchase-price, and it is as of that date that the value is to be estimated. (*Matter of Munson*, 29 Hun, 336).

This is a very proper case for the direction of appointment of new commissioners if the power exists to do so. The parties by the contract named the persons to be appointed as such to appraise the compensation or purchase-price to be paid. It is contended by the counsel for the appellant that by their appoint-

ment and report the purposes of the agreement, so far as relates to those persons as commissioners, have been accomplished, and that inasmuch as the contract provided that proceedings should be taken under the statute to appraise the compensation, and they were so taken, and as "all rights of appeal given by law" were by it *reserved to the parties*, the power of this court to direct the appointment of new commissioners, in the event that the appraisal and award are set aside, exists as one of the incidents of the appeal.

The statute provides that "on the hearing of such appeal the court may direct a new appraisal before the same or new commissioners in its discretion." (Laws 1850, chap. 140, § 18.) This question would have been free from difficulty if commissioners had been appointed pursuant to stipulation or agreement made in the proceeding, and merely naming the persons agreed upon, but this may be deemed something more and different. The contract is one of sale of the premises not made in a legal proceeding, but before any proceeding is instituted, and as part of the arrangement under which the voluntary agreement for the sale was made, the persons are named who shall in the usual manner provided by law ascertain the amount of the compensation. The court in the first instance might have refused to appoint those persons as commissioners, and may yet revoke the order of their appointment.

It is not necessary here to say what the effect of either such refusal or revocation might have been or would be on the contract of the parties in other respects. It will be observed that the contract contains various stipulations. The title is to be taken by warranty deed. The grantor practically is to indemnify against incumbrances (if any) other than those provided for and to be paid out of the fund. There are interests to be transferred, taken, protected and preserved by the terms of the contract, and which cannot come from the proceeding independent of it, and which in legal effect distinguish this from an ordinary proceeding under the statute to acquire land. While it is unnecessary here to determine whether or not the court has the power to proceed in disregard of the contract, it must be assumed that it is binding on the parties to it, and that the court, in proceeding in affirmance of the contract and in recognition of the force of its provisions, must observe the limitations contained in it upon the exercise of power in the proceeding, and it is

questionable whether any other than that given by it can in that view be exercised.

The reservation to the parties of all rights of appeal necessarily includes the power of the court to review, reverse and set aside orders and awards appealed from. But we are not prepared to say that it goes so far as to embrace the power of the court to direct a new appraisal before new commissioners. The contract provided that the persons named "shall be appointed commissioners to ascertain and determine the compensation," etc. That language would seem to continue to speak and declare the purpose of the parties until the amount of compensation is finally ascertained, and to thus qualify the statutory power of the court in the proceeding. There is a condition implied in the investment of judicial powers, even by voluntary agreement, that the result shall come from the faithfully exercised judgment of those charged with the duty, and when that is not had the party aggrieved is not without remedy. As a rule the court cannot modify or alter a contract voluntarily made expressing the purpose of the parties to it.

If the direction of the new appraisal by other commissioners may be treated as a modification of an existing operative agreement of the parties, it is not within the legitimate power of the court in recognition of that contract to give such direction. It is usual for the courts to give effect to the agreement of parties fairly made. (*D. and H. C. Co.* v. *P. C. Co.*, 50 N. Y., 250.) There is no occasion now appearing to enable or justify the court in treating this proceeding as independent of that contract. And it is treated as effectual for the purposes of the conclusion reached here in that respect, which is, that in view of the agreement between the parties this court cannot, now and on this appeal, direct a new appraisal before new commissioners, and therefore give no direction in that respect. And in that view this conclusion is put on the ground of want of power. It is deemed unnecessary for the purpose of a rehearing before commissioners to express consideration of any other question presented by counsel.

The order of confirmation should be reversed and the appraisal and report set aside.

BARKER, J., concurred; SMITH, P. J., not sitting

HAIGHT, J. (dissenting):

The award in this case was $470,000 for one hundred and seventy-one and one-half feet of land on Buffalo creek. I am of the opinion that the award is greatly in excess of the true value of the premises in question, and that the commissioners adopted a wrong basis in coming to their conclusion. A new appraisal should be directed before new commissioners, provided this court has the power to so order. Such power exists under the statute in the discretion of the court, and it only remains to be determined whether or not it has been taken away by the agreement of the parties.

Before instituting these proceedings the petitioner entered into an agreement with the Bennetts to purchase the lands in question. None of the other parties joined in the agreement. By the terms thereof the petitioner agreed, with due diligence, to take proceedings as provided by chapter 140 of the Laws of 1850, as amended, etc., in the Supreme Court for the purpose of ascertaining the value of the premises and of the erections thereon, *and of obtaining the title in fee thereto, etc.*

It then provides that in the proceedings Nelson K. Hopkins, Robert Dunbar and Brigham Clark shall be appointed commissioners to ascertain and determine the compensation, etc. It then provides *that all rights of appeal given by law shall be reserved to either party.* The petitioner was to pay $2,250 on the execution of the contract, and the further sum of $20,000 within ten days thereafter, and the $20,000 was to be deducted from the amount of the award.

If this is an ordinary contract for the sale of lands then these proceedings were unnecessary, for the Bennetts could contract to sell their interest in the premises, and if they could not agree on the amount that should be paid it was competent for them to agree with the railroad company to leave it to the persons named to fix the amount. It does not appear to me that such is the effect of the contract, for it specifically provides that these proceedings shall be instituted with due diligence and for the purpose of obtaining the title in fee. It is apparent, therefore, that the petitioner was to proceed under the statute. The parties then agree upon the commissioners. It is the usual practice for the parties to agree upon the commissioners if they are able to, and if they agree it is usual for the court

to appoint the persons so agreed upon; but the court is not bound to appoint such persons, and may in its discretion appoint individuals who have not been agreed upon. Besides, in these proceedings there were other parties who had not joined in the agreement, and they had and still have the right to be heard upon the question as to who shall appraise their interests. It thus appears to me that the agreement as to the commissioners was but the ordinary stipulation of the parties as to the persons who should serve in the first instance, subject to the approval and appointment by the court after hearing and considering the claims of the other parties.

Again, the contract specifically provides that "*all* the rights of appeal given by law, shall be reserved to either party." One of the rights given by law is to have this court exercise its discretion upon the question as to whether or not the new appraisal shall be made by new commissioners. If *all* the rights on appeal are preserved this is one, and this court still has the power to direct that the new appraisal shall be before other commissioners; to hold otherwise is to nullify in part this provision of the agreement.

The order should be reversed, and the appraisal and report of commissioners set aside and a new appraisal directed by new commissioners to be appointed by the Special Term upon notice to all the parties appearing in these proceedings.

Order of confirmation reversed and appraisal and award set aside; directions for a new appraisal before new commissioners refused upon the sole ground that this court has not the power, for the reason that the parties have by their contract agreed upon the commissioners.