JAMES STINSON *vs.* CHICAGO, ST. PAUL & MINNEAPOLIS RAILWAY COMPANY.

October 9, 1880.

Condemnation of Land—Evidence of Value—Sales of similar Land in the Vicinity.—Upon a jury trial upon a land-owner's appeal to the district court from an award of commissioners, in proceedings for the condemnation of land for railroad purposes, the appellant called a witness who testified to sales of other lands sold by him from time to time, in the vicinity of the land sought to be condemned, and also gave testimony with reference to the similarity of situation and character of the lands so sold to the land sought to be condemned. *Held,* 1. That evidence of the prices obtained for the lots so sold by the witness, and of the average price obtained for the lots so sold, was incompetent and inadmissible.

Same—Want of Similarity—Remoteness in Time.— 2. That, even if such evidence could have been competent and admissible, if a proper foundation had been laid, the court, in the exercise of a sound discretion, might properly have excluded it in this case, upon the ground that no

sufficient similarity of character and situation between the land sold and those sought to be condemned had been shown, and upon the further ground of the remoteness of most of the sales from the time of the filing the commissioner's award.

**Same—Value of Land for all Purposes.—3.** That the proper inquiry upon. the point of value is what is the value of the land (sought to be condemned) for any purpose, and not what is its value for railroad purposes.

Appeal by Stinson from an order of the district court for Ramsey county, *Wilkin,* J., presiding, denying his motion for a new trial after a verdict awarding him $8,312.25—the same amount awarded him by the commissioners.

At the trial, it appearing that a bridge across a ravine would be necessary to connect Westminster avenue, as laid. out on Stinson's property, with the travelled part of the same avenue, in the city of St. Paul, William Crooks, a civil engineer, called for the appellant, having testified to his qualifications as a civil engineer, and his knowledge of the locality, and having also testified that a bridge connecting these two points would not be an expensive structure, was asked, "About. what, in your judgment, would be the cost of such a structure, being about 700 or 800 feet across?" The question was excluded, on respondent's objection, as immaterial and irrelevant, and the appellant excepted. The other exceptions. taken are stated in the opinion. .

*Bigelow, Flandrau & Clark* and *R. B. Galusha,* for appellant.

The best evidence of the value of a piece of land is the price that people have from time to time paid for it; not. what anyone thinks it ought to sell for. The mere opinions. of witnesses as to value are not entitled to much consideration. *Matter. of William Street,* 19 Wend. 678; *Matter of Pearl Street,* 19 Wend. 651; *Lee* v. *Railroad Co.,* 13 Barb. 169.. In some states opinions as to value are not admitted at all.. *Rochester* v. *Chester,* 3 N. H. 349, 364; *Peterborough* v. *Jaffrey,* 6 N. H. 462; *Beard* v. *Kirk,* 11 N. H. 397; *Hoitt* v.. *Moulton,* 1 Foster, (N. H.) 586.

Evidence of actual sales and leases of land similarly situated is admissible to prove value. *Davis* v. *Railroad Co.*, 11 Cush. 506. In *Patterson* v. *Boom Co.*, 3 Dillon, 468, the estimates of the witnesses as to the value of the property (an island in the Mississippi river) ranged from $300 to $20,000 or $30,000, and *Dillon, J.*, instructed the jury that "if there have been sales of these islands, or of other islands similarly situated and adapted to the same uses, or contracts with landowners by the Boom Company for the use of other lands in the vicinity for boom purposes, these may be resorted to by you, looking at all the circumstances of these sales and contracts, in the determination of the ultimate question of value ; and, ordinarily, actual sales and transactions are better evidence of value than mere opinions of witnesses on the subject." This case was affirmed in the U. S. supreme court, (*Boom Co.* v. *Patterson*, 98 U. S. 403,) and will of course be the rule of decision in the federal courts on this point. The same rule was sanctioned in *Lehmicke* v. *St. Paul, S. & T. F. R. Co.*, 19 Minn. 464; and was adopted in *Chandler* v. *Jamaica Pond Aqueduct Co.*, 122 Mass. 305; *Paine* v. *Boston*, 4 Allen, 168; *Shattuck* v. *Stoneham Branch R. Co.*, 6 Allen, 115 ; *Boston & Worcester R. Co.* v. *Old Colony R. Co.*, 3 Allen, 142; *Wyman* v. *L. & W. R. Co.*, 13 Met. 316; *St. Louis, Alton & T. H. R. Co.* v. *Haller*, 82 Ill. 211; *Jones* v. *C. & I. R. Co.*, 68 Ill. 380; *Presbrey* v. *Old Colony R. Co.*, 103 Mass. 1.

The court erred in rejecting the question "What is the value of the land of the plaintiff in dispute here, for any and all purposes, including its adaptability for railroad purposes, taking into consideration that it cannot be used by the plaintiff for railroad purposes, but also taking into consideration the fact that it is adapted to railroad purposes." This is the very question framed by the court, and put to all the witnesses, in the case of *Patterson* v. *Boom Co.*, 3 Dillon, 468. See *Boom Co.* v. *Patterson*, 98 U. S. 403.

*Davis, O'Brien & Wilson*, for respondent.

BERRY, J.   This is an appeal from an order of the district court for Ramsey county denying the appellant (Stinson's) motion for a new trial in condemnation proceedings.   The report of the commissioners was filed June 25, 1879, and the trial in the district court took place in November following. The lands condemned consisted of some 70 lots and blocks in Stinson and Arlington Hills addition to St. Paul.   In the district court, R. W. Johnson testified that he had had charge of Stinson's addition since it was laid out, in 1872.   Had sold property in it for Stinson—20 or 30 lots.   These sales were made during the last seven years.   Last sale was Friday, week before last.   Sold two lots in June or July, 1879, not far from the time this award was filed.   They were in the immediate vicinity of this property.   It was similar property (superficially considered) to that now in controversy.   The ground from the south side slopes to the railroad, and there is a rise to the north side; so they are similarly situated, although, probably, a little steeper on the north side than on the south side.   The sales were *bona fide,* to persons desiring to purchase, and who paid the money.

Question by appellant: "What were the prices for which that property was sold that you speak of?"   Respondent's counsel objected, and questioned the witness for the purpose of forming a basis for the objection.   The witness answered: "There are 77 acres in this addition—about 480 lots; sold last spring lot 11, in block 13, and lot 11, in block 11; have sold other lots in this addition in the last seven years, along at different times, from year to year; can't give the dates when, within a year before selling those two lots, I sold any others; I sold five here two or three days ago; should say that I have sold three or four within a year from June 25, 1879."   Respondent's counsel then objected to the appellant's question as incompetent and immaterial, and not evidence of the value of the condemned property under the situation testified to.   The court excluded the question, and appellant excepted.   The witness then testified that the lots spoken of,

as having been sold by him in the immediate vicinity of this property, are of the same size and similarly situated as lots in the property in dispute; "they are similarly situated with lots opposite them on the land in dispute, though not situated exactly alike; they are both on an inclined plane; one is more inclined than the other; they are a little steeper on the side the railroad wants to condemn; I know what these 30 or 40 lots, that have been sold there, were sold for." Upon this foundation the appellant asked the witness: "What has been the average value, or the average price, for which those lots have sold?" The question was objected to as incompetent, immaterial, and irrelevant, and was excluded by the court, appellant excepting.

1. Whether these questions were properly excluded is the principal subject of inquiry in this case. We think the questions were properly excluded for several reasons. If it be admitted that evidence of the price at which property similar in character and situation to other property sought to be condemned was sold, is admissible to show the value of the latter property, as is held in some states,—notably in Massachusetts,—still, the rule is that the determination of the question whether the similarity of character and situation is sufficient, and the sale sufficiently recent to make the proposed evidence admissible, is a matter not regulated by any fixed rules, but wholly within the sound discretion of the trial court. *Shattuck* v. *Stoneham Branch Railroad*, 6 Allen, 115; *Benham* v. *Dunbar*, 103 Mass. 365; *Green* v. *Fall River*, 113 Mass. 262; *Chandler* v. *Jamaica Pond Aqueduct Co.*, 122 Mass. 305. Upon the foundation laid as we have seen in this case, and upon the plat or map produced upon the trial, we think that the court below, in the exercise of sound discretion, might well have excluded the question asked, upon the ground that the requisite similarity of the property condemned to that sold was not shown to exist; and so, also, with regard to the time of the sales inquired about, the court might very properly exclude the question upon the ground that some of the

sales were so remote in time from the date of the award that the average prices inquired for could not furnish any reasonable evidence of the value of the condemned property at the time of the award, or have any effect except perhaps to mislead the jury. See cases cited, *ante.* But, irrespective of these considerations, we are of opinion that—unless, perhaps, in an exceptional case, in which no other evidence can be had—evidence of the kind sought to be elicited by the questions under consideration should be excluded on general grounds of policy and convenience.

The objections to evidence of this kind are stated in *East Pennsylvania Railroad* v. *Heister*, 40 Pa. St. 53, where the court, speaking of similar evidence received in that case, says: "It did not pretend to fix the market value of the land, but assumed to ascertain it by the special, and it may be exceptional, cases named. This will not do; for, if allowed, each special instance adduced on the one side must be permitted to be assailed, and its merits investigated, on the other; and thus would there be as many branching issues as instances, which, if numerous, would prolong the contest interminably. But even this is not the most serious objection. Such testimony does not disclose the public and general estimate which, in such cases, we have seen is a test of value. It would be as liable to be the result of fancy, caprice or folly as of sound judgment in regard to the intrinsic worth of the subject-matter of it, and consequently would prove nothing on the point to be investigated. The fact as to what one man may have sold or received for his property is certainly a collateral fact to an issue involving what another should receive, and, if in no way connected with it, proves nothing. It is therefore irrelevant, improper, and dangerous." See, also, *Central Pacific R. Co.* v. *Pearson*, 35 Cal. 247. As before said, we are of opinion that the questions were properly excluded. In *Lehmicke* v. *St. Paul, S. & T. F. R. Co.*, 19 Minn. 464, evidence similar to that excluded appears to

have been received, but it does not appear to have been objected to, and its admissibility was acquiesced in by counsel, and thereupon apparently assumed by the court without discussion.

2. The same witness having testified that the land proposed to be condemned had "peculiar adaptation to railroad purposes in respect to the ease with which trains can come in and go out of St. Paul with a less grade on that route than any other, and presenting one of the few places by which railroad trains can get in," the appellant then asked him this question: "What is the value of the land of the plaintiff, in dispute here, for any and all purposes, including its adaptability for railroad purposes, taking into consideration the fact that it cannot be used by the plaintiff for railroad purposes, but also taking into consideration that it is adapted to railroad purposes?" The question having been excluded, and exception taken, the appellant then asked the witness: "What, in your judgment, is the value, for railroad purposes, of the land of the plaintiff proposed to be condemned by this railroad company?" The court excluded the question, saying: "I think the question is, what is its value for any purpose?" and appellant excepted. The witness was then asked: "What is the value of the land of the plaintiff which is proposed in this proceeding to be taken by the railroad company, for any purpose for which it is adapted, considered as of the time of filing the award?" This question was allowed, and the witness answered: "I have given my answer. I answered the question in regard to its value for building purposes, and I don't think that my life has been sufficiently spent with railroads to justify me in saying what it would be worth for railroad or for any other purpose. I don't think I can answer the latter part of this question. I believe it would be more valuable for other than for building purposes, but as to the extent I do not feel competent to answer." The witness had previously testified to his estimate of the value of each of the

lots in question, and that his estimate of such "value had been without any reference to the railroads which pass through it—as building lots simply."

Whether the two excluded questions were admissible or not, it is quite apparent that the witness, according to his own testimony, was unable to answer them, and that the exclusion, therefore, worked no prejudice to the appellant. But, aside from this consideration, we are of opinion that the view taken by the court below was the correct one, viz., that the proper question was, what is the value of the property sought to be condemned for any purpose? that is to say, for any purpose for which it is adapted and is available. No reason can be given why property taken under the eminent domain by a railroad company, or for any public purpose, should be paid for at a rate exceeding its general value—that is to say, its value for any purpose. Any use for which it is available, or to which it is adapted, is an element to be taken into account in estimating its general value. But where a condemnation is sought for the purposes of a railroad, to single out from the elements of general value the value for the special purposes of such railroad, is in effect to put to a jury the question, what is the land worth to the particular railroad company, rather than what is it worth in general? The practical result would be to make the company's necessity the land-owner's opportunity to get more than the real value of his land.

3. The question addressed to the witness Crooks was properly rejected. If it had been admitted, and the answer had been favorable to the appellant, it could have had no other effect than to lead the jury away from the real question— that of value at the time of the award—into mere conjectures and speculations as to what might or might not be done, when or how, if ever, no man could tell.

These are all the points made by the appellant which appear to require special notice, and the result is that the order denying appellant's motion for a new trial is affirmed.