CLARISSA PIERCE & another *vs.* CITY OF BOSTON.

Suffolk. March 13, 1895. — June 21, 1895.

Present: FIELD, C. J., ALLEN, MORTON, LATHROP, & BARKER, JJ.

*Land taken for Public Improvement — Damages — Evidence — Experts — Value.*

Evidence of the distance which a house has been moved is incompetent as a basis for an inference as to its strength and the character of its construction.

An expert on real estate values cannot be asked whether a tract of land containing a little less than ten thousand feet is large enough for both a house and a stable.

An expert on real estate values, who, on cross-examination, denies that several years previous to the controversy he had said that he was not familiar with land values in a certain locality, cannot be contradicted on that point.

An expert on real estate values who has estimated the value of certain land may be asked on cross-examination, for the purpose of controlling the reasons given by him for his opinion, whether he had not for one or two years held for sale other land in the vicinity, and had been instructed to ask therefor a price which was about one third of the valuation placed by him upon the land in question.

An expert carpenter and builder who has examined the exterior of a house and has measured its exterior dimensions, but has not been inside of it, is competent to express an opinion as to its value in reply to a hypothetical question describing the interior of the house.

At the trial of a petition for the assessment of damages for land taken by the right of eminent domain on the issue of value, evidence is admissible of sales of other land in the vicinity two years before the taking, where it appeared that there

had been no more recent sales, and that there had been no great increase in values since then.

At the trial of a petition for the assessment of damages for land taken by the right of eminent domain, on the issue of value evidence is admissible of sales of other land in the vicinity, notwithstanding some differences in size and the character of the buildings· thereon between the other estates and the estate in controversy, if, in the opinion of the presiding judge, on all the evidence, there were material considerations common to and affecting the value of all the estates in the vicinity.

PETITION for the assessment of damages for the taking, by the city of Boston, under the provisions of St. 1875, c. 185, of a tract of land, containing 28,790 square feet, with the buildings thereon, situated at the corner of Pond and Prince Streets in that part of Boston called Jamaica Plain. Trial in the Superior Court, before *Hopkins*, J., who allowed a bill of exceptions, in substance as follows.

One Atwood, called as a witness for the petitioners, testified that he had examined the dwelling-house standing on the land of the petitioners when the land was taken, on April 29, 1892, and that the house had since been removed therefrom to Custer Street. The petitioners then offered to show the distance from their land to Custer Street, for the purpose of showing the strength and character of the construction of the building, so far as that could be inferred from the fact that the building had been moved that distance. The judge excluded the question, and the petitioners excepted.

The respondent having, on the cross-examination of a witness for the petitioners, inquired as to the price for which a parcel of vacant land, containing a little less than ten thousand feet, situated on the corner of Orchard and Pond Streets, was sold by Brewer to Gill, the petitioners asked one Downes " whether the lot was large enough for both a house and stable," but the judge excluded the question, and the petitioners excepted.

Roswell S. Barrows was called by the petitioners as an expert regarding the value of the land and buildings, and, after stating that, in his opinion, they were worth $30,592 at the time of the taking, he stated on direct examination, among other things, as reasons for his opinion, " that small lots in the locality have been, and I would say are at present, in very good demand. There have been few places in that locality that have been placed on the market. They have been disposed of quite readily."

On cross-examination it appeared that for one or two years he had had in his hands for sale the Clark estate on the opposite corner of Pond and Prince Streets, with an asking price, including the house and land, which he was instructed by the owners to ask for it. Thereupon the respondent was permitted to ask him, first, if that asking price, throwing in the buildings, was not a quarter of the price that the witness put on the land and buildings in suit, and then whether it was not about one third; and the witness, subject to the exception of the petitioners, answered that possibly it was about one third.

No other evidence was offered of the size or shape of the Clark land, nor as to the size or character of the buildings upon it, nor as to the similarity or dissimilarity of the estate to the land of the petitioners, and it did not appear that the witness had been consulted by the owners as to the price which they should fix, or what reasons induced the owners to fix upon this price, or whether the witness approved of it. The jury did not examine the Clark estate at the time of the view, but it was in their sight as they stood on the land taken from the petitioner, and the Clark house was pointed out to them by the counsel for the respondent.

The respondent called as a witness one Merritt, who testified that he was a carpenter and builder; that he had measured the exterior dimensions of the house on the land of the petitioners, and had examined it thoroughly on the outside, but, having been unable to get into it, had not examined the interior. He said that from what he had seen of the exterior and from the description of the interior he could give a judgment of the value of the house, and was then asked the following question: " Taking a building of the size and dimensions of the building that you have described, assuming it to have below a parlor and a sitting-room, halls, back stairs in the main part; in the L, kitchen and dining-room and a store-room, and in the one story L, back, a summer kitchen; and up stairs to have two rooms in the front or main body of the house, and two rooms in the L, and two rooms up in the attic, lighted by a dormer window, to be finished with fine wainscoting down stairs, — below, and of the dimensions that you found, — what, in your opinion, would be the fair market value of this house, finished in the manner

which I have described ? " Consider, also, " that the cellar was divided by brick partitions into three parts, that the height of the first story was ten feet in the main building and nine feet in the second story; that these two attic rooms were lighted by dormer windows; that the rooms in the L were lower studded than those in front," and " that there was an open fireplace in the parlor, and another open fireplace up stairs."

The petitioners objected to this question, on the ground that sufficient data were not furnished for the opinion of an expert; but the judge permitted the question to be answered, and the petitioners excepted.

The respondent also called one Pratt, who testified that he had lived on the estate of his father in Jamaica Plain nearly all his life; that after the death of his father the estate was sold, in May, 1890; that the estate consisted of about sixty thousand feet of land, with a large house and stable, about a minute's walk from the street cars on Centre Street, and about a minute and a half from Jamaica Pond, and perhaps five minutes' walk from the petitioners' estate. The house was a large square house, French roof, with twelve or thirteen rooms, and a small L. The house was then from thirty-one to thirty-three years old. The stable was arranged for four horses; there was a large carriage-house, and an L on each side, one where cows were kept, another for storage. The witness was then asked the amount of the sale, to which the petitioners objected; and in answer to questions by the petitioners, he stated that the estate was about two hundred feet in depth, with a frontage of more than that on Pond Street. The witness further testified, that there had been a general increase in values in Jamaica Plain in each year since the sale; that electric cars had been substituted for horse cars in October, 1891, and that this had affected values on the streets through which the cars ran, and streets adjacent thereto.

One Beaumont, called as a witness by the respondent, testified that he bought the estate known as the Duff estate, on Burroughs Street, in May, 1887, and sold it in May, 1890; that the estate consisted of nearly sixty thousand feet of land, containing a large house nearly fifty years old, stable, outbuildings, and fruit trees.

There was no evidence as to the similarity of these estates to the land of the petitioners other than plans and maps, and the general knowledge of the jury of ,the vicinity. No evidence of a sale of either estate had been offered by the petitioners, and it appeared from the statements of experts on both sides that no sale had occurred in the vicinity for some time previous to the taking, and, with the exception of the purchases by the city, no sales had occurred in the immediate vicinity for a great many years previous to the taking. The judge admitted evidence of the price for which the estates were sold.

The respondent called as an expert one Viaux, who testified that he was a real estate broker and was familiar with real estate values in Jamaica Plain. On cross-examination he testified that in 1890 he was trying to purchase the Curtis estate in Jamaica Plain; that he knew L. L. P. Atwood, and, knowing that he had made several sales of estates on Centre Street, near the Curtis place, he went to him for the purpose of verifying the prices which he had heard that Atwood obtained at the sales, and got Atwood to go with him to Centre Street and show him the estates which had been sold. He denied that he ever told Atwood that he was not acquainted with real estate values in Jamaica Plain.

The petitioners called Atwood in rebuttal, and asked him whether Viaux had told him that he was not acquainted with real estate values in Jamaica Plain ; but the judge excluded the question, and the petitioners excepted.

The jury returned a verdict for the petitioners in the sum of $19,535.85 ; and the petitioners alleged exceptions.

*R. M. Morse*, (*J. Duff* with him,) for the petitioners.

*T. M. Babson*, for the respondent.

MORTON, J. The petitioners do not rely much upon their exception to the exclusion of the question to Atwood as to the distance of Custer Street from their land, or the question to Downes whether the land sold by Brewer to Gill was large enough for a house and stable, or on the question to Atwood as to the statement made to him by Viaux, and we think it only necessary to say that, after considering them, we discover no error in the rulings.

1. The witness Barrows was offered by the petitioner as an

expert regarding the value of the land and buildings, and, after stating what in his opinion they were worth, stated on direct examination, among other things, as reasons for his opinion, " that small lots in that locality have been, and I would say are at the present time, in very good demand. There have been very few places in that locality that have been placed on the market. They have been disposed of quite readily."

It appeared on cross-examination that he had had for one or two years the estate on the opposite corner in his hands for sale, with price, including the house and land, which he was instructed by the owner to ask for it. Thereupon, the respondent was permitted to ask him, first, if that asking price, throwing in the buildings, was not a quarter of the price that the witness put on the land and buildings in suit, and then whether it was not about one third; and the witness answered that possibly it was about one third. We think that the evidence was admissible, not for the purpose of showing the asking price of land in the vicinity, but as tending to control the reasons for the opinion which the witness had previously expressed as to the value of the land and buildings in controversy. *Brown v. Worcester*, 13 Gray, 31.

2. The question put to the witness Merritt was properly admitted. It was for the jury to say how much the fact that he had not seen the interior should affect the weight to be given to his testimony. As an expert carpenter and builder, he would have been competent to express an opinion without having seen the house at all. *Cook v. Castner*, 9 Cush. 266.

3. The petitioners object that the sales of the Pratt and Duff estates were not admissible, first, because too remote in point of time, and, secondly, because the estates were not similar to that of the petitioners. The fact that the sales were about two years before the taking did not of itself render them incompetent. *Benham v. Dunbar*, 103 Mass. 365. There was testimony tending to show that, with the exception of the purchases by the city, no sales had occurred in the immediate vicinity for a great many years previous to the taking, and none in the vicinity for some time before that, so that none more recent than those in question were obtainable. The rise in values does not appear to have been so great as to render them incompetent;

and while the introduction of electric cars had affected values on the streets through which they ran and on streets adjacent thereto, it is sufficient to say that the petitioners' estate was not on a street through which electric cars ran or on an adjacent street.

The question of similarity presents more difficulty, but we cannot say that they were so dissimilar as to render the admission of the sales clearly wrong. The fact that the two estates were considerably larger than the petitioners' estate would not of itself make evidence of the sales incompetent; nor would the fact that the buildings might not have been precisely like those on the estate of the petitioners. *Patch* v. *Boston*, 146 Mass. 52. There may have been material considerations common to and affecting the value of all estates in the vicinity, which upon examination of the plans and maps, and a consideration of the other evidence, in the opinion of the presiding judge, rendered the prices paid for the two estates competent, notwithstanding some differences between them and the estate of the petitioners. In all such cases much must be left to the discretion of the court, and we cannot say that this discretion in this instance was erroneously exercised. See *Lyman* v. *Boston, post,* 99. *Bowditch* v. *Boston, post,* 107.

4. The fact, if it was a fact, that the witness Viaux may have told the witness Atwood in 1890, two years or thereabouts before the taking, that he was not acquainted with real estate values in Jamaica Plain, related to a collateral and immaterial matter, and was properly excluded by the court. *Davis* v. *Keyes,* 112 Mass. 436. *Brooks* v. *Acton*, 117 Mass. 204. *Roberts* v. *Boston*, 149 Mass. 346.

*Exceptions overruled.*