FREDERICK M. HUBBELL, ET AL, Appellants, v. CITY OF DES MOINES, IOWA, ET AL, Appellees.

**Eminent domain:** EVIDENCE: BOUNDARIES. Meander lines are not considered in law boundary lines; and refusal to receive in evidence the field notes of the government surveyor showing the meander lines of a river in the vicinity of land sought to be condemned was not erroneous.

**Same:** EVIDENCE. Photographs and levels taken of land considerably remote from that sought to be condemned are not admissible in evidence in such proceeding; but photographs of the same property taken in time of flood are admissible for the purpose of showing the conditions and surroundings at about the time of the condemnation.

**Same:** REASONABLE MARKET VALUE: EVIDENCE: INSTRUCTION. In determining the reasonable market value of property sought to be condemned the jury may consider those proven facts affecting the desirability of the premises, which would fairly and naturally influence the owner and purchasers of ordinary prudence; and they may also consider the proven value of other similar property in the vicinity, when limited in its application to the bearing it may have upon the value of the property in controversy. The instructions in the instant case are sustained.

**Same:** EVIDENCE OF VALUE: SALE OF OTHER PROPERTY. Evidence of what other property of the same character and similarly situated sold for on the market, shortly after the condemnation proceedings were instituted, is not substantive and independent proof of the value of the property sought to be condemned.

*Appeal from Polk District Court.*—HON. JAMES P. HEWITT, Judge.

MONDAY, JUNE 29, 1914.

PROCEEDINGS for the condemnation of certain real estate belonging to the plaintiffs, in Des Moines, Iowa, for city purposes.

Plaintiffs appealed from an award made by a sheriff's jury, to the district court, and upon a trial of that appeal to a jury they were awarded the sum of $31,000.00, which was $1,500.00 less than the award by the sheriff's jury. They appeal.

*Parker, Parrish* and *Miller,* and *John McLennan,* for appellants.

*R. O. Brennan, H. W. Byers* and *Eskil C. Carlson,* for appellees.

DEEMER, J.—The issues arising in the trial court were, first: the size of the lot, it being bounded on the east by the Des Moines river, which, at the time of the original survey, was declared a navigable stream; and, second, the amount of compensation which should be awarded for the taking of the lot. The lot was sought to be condemned for park purposes, and the entire tract was so taken, so that any question of consequential damages was entirely eliminated.

The latter of the two questions was simply: What was the fair market value of the property taken? Upon the first proposition the trial court instructed the jury as follows:

The Des Moines river is a meandered stream, but the meander line of said stream is not to be taken as the east boundary line of the lot in question, as the same existed on the 16th day of February, 1912, and under the evidence in this case it does not in any sense limit or define the east boundary line of said premises at said time.

Said lot being located upon a meandered stream, the owner of said lot, commonly called a riparian owner, is the owner of the land to a line called the ordinary high water mark, which is the eastern boundary line of said premises, and the state is the owner of the stream and all parts thereof extending between the ordinary highwater marks on each side thereof.

At the time the said lot 2, Coliseum Place, being the premises involved in this controversy, was appropriated by

the defendant under said condemnation proceedings, being the 16th day of February, 1912, the plaintiffs in this case were the owners of said lot, and the said line known as the ordinary high water mark at the west line of the Des Moines river was the east boundary line of plaintiff's said premises at said time.

In fixing the reasonable market value of said premises on said 16th day of February, 1912, you should determine said value upon the basis of the area of said lot as it existed on said date, by determining the location at said time of said ordinary high water mark which was the eastern boundary line of plaintiff's lot at said time. The ordinary high water mark of a stream is not always a fixed or permanent line, but under certain conditions may undergo changes caused by the action of the water, and the owner of the land abutting on such stream holds his title subject to the possibility of the amount of his land being increased or diminished by such action of the water.

The line which fixes or determines the ordinary high water mark is not the line reached by unusual floods, nor is it necessarily the point to which the water rises at any particular time, but it is the line which the river or stream impresses upon the soil as the limit of its dominion, and such line is to be determined from the record which the river makes for itself. It is that line along the bank or shore of the river or stream where such river or stream leaves a permanent impression of its domain; the limit of the line where vegetation is interfered with by the action of such river or stream. The line which fixes ordinary high-water mark is co-ordinate with the limits of the bed of the river or stream, and that only is to be considered the bed which the water occupies sufficiently long and continuously to wrest it from vegetation, and destroy its value for agricultural purposes. Soil which is submerged or affected by the water in the bed of the river or stream so long or so frequently in ordinary seasons that vegetation will not grow upon it may be regarded as part of the bed of the river or stream which overflows it, and such soil does not belong to the adjacent property owner.

In this connection you are further instructed that any kind of vegetation, whether trees or smaller growths, which grows and flourishes best in the immediate vicinity of running streams that are subject to overflow, and which, by reason of

a peculiar nature that may be adapted to wet places, shoots up in places as the water recedes, and which can withstand the effect of such overflow without injury for a longer period of time than other kinds of vegetation, should not necessarily be classed as vegetation to which the law refers as marking the limits of the ordinary high-water mark in cases of this character, unless the soil on which such vegetation grows is adapted to, and can be used for, the growth of ordinary vegetation or for agricultural purposes.

You are to consider and determine the character of the vegetation, if any, appearing from the evidence to have a bearing upon the question of the location of the ordinary high-water mark involved in this case at the time in question. The ordinary high-water mark which was the east boundary line of said lot on the 16th day of February, 1912, is the true water mark as the same had theretofore been established or impressed upon the soil by natural causes; that is, by the action of the waters of the Des Moines river as they affected the land or soil along the shore or bank of said river in its natural condition, without human interference, or changes wrought by artificial means.

If you should find from the evidence that the shore or bank of said river at any time prior to said 16th day of February, 1912, had been permanently affected or changed by human interference or by artificial means, so as to permanently obliterate or wipe out the ordinary high-water mark of said river theretofore existing, then and in such case such human interference, and changes caused by artificial means, would not have the effect to change said ordinary high-water mark as the same had been brought about and theretofore existed by reason of such natural causes and before such human interference, and in such cases, if you should find from the evidence that prior to the said 16th day of February, 1912, permanent changes had been made in the shore or bank of said river by reason of human interference and by artificial means which had the effect to permanently obliterate or wipe out the ordinary high-water mark of said river theretofore existing, you should find and locate the east boundary line of said lot 2, Coliseum place, on said 16th day of February, 1912, at the line of the ordinary high-water mark as the same last existed before said permanent changes which were so

brought about by such human interference and artificial means.

There has been evidence introduced on the trial tending to show that a waterway formerly known as Bird's run extended through the lot in question and emptied into the Des Moines river at or near the east line of said lot. You are instructed, as a matter of law, that said Bird's run was not a meandered stream, and hence the plaintiffs, or the former owners of said lot, were the owners of all of the bed of said stream which you find to have been upon or over said lot 2, Coliseum place, and the mere fact, if it be a fact, that the Des Moines river in former times of freshets or high water, or at times when the river may have reached a point higher than the ordinary high-water mark, as elsewhere in these instructions defined, overflowed a part of said lot along or adjacent to Bird's run, this fact would not, in any manner, affect the title to any part of plaintiffs' lot which was west of the ordinary high-water mark of the Des Moines river, as you may find the same to have been located at said time.

The title to and ownership of the Des Moines river, which includes the bed of the river with all parts of the shore or bank which lies between the ordinary high-water mark on each side of said river, is in the state of Iowa, but the state of Iowa, by legislative enactment, has granted to the city of Des Moines jurisdiction and control, for park and other purposes, of a certain portion of said river within the city of Des Moines, including that portion which lies east of the ordinary high-water mark of said river, which is the east boundary line of said lot 2, Coliseum place.

You are instructed that at the time of said condemnation proceedings on said 16th day of February, 1912, the plaintiffs were the owners of said lot 2, their ownership extending only to the line of said ordinary high-water mark on or along the east side of said lot, and that the city of Des Moines had jurisdiction and control of all parts of the space or area lying east of the said ordinary high-water mark and west of the ordinary high-water mark at the east shore of said river. In fixing a value upon plaintiffs' said property at the time in question, you will be limited to the land or premises which were west of the ordinary high-water mark at the west side of the Des Moines river as it existed at said time, regardless

of the character of the use or occupancy of the space or area lying east of said ordinary high-water mark.

None of these instructions are complained of, and, as they are as favorable to plaintiffs as the law will justify, they must be accepted as correct. That they were not prejudicial to the plaintiffs see *McManus v. Carmichael,* 3 Iowa, 1; *Haight v. Keokuk,* 4 Iowa, 199; *Musser v. Hershey,* 42 Iowa, 356; *Houghton v. Railroad,* 47 Iowa, 370; *Welch v. Browning,* 115 Iowa, 690; *Berry v. Hoogendoorn,* 133 Iowa, 437; *Merrill v. Cerro Gordo County,* 146 Iowa, 325, 330.

In this connection complaint is made of the trial court's ruling denying plaintiffs the right to offer in evidence the government surveyor's field notes showing the meander line

1. EMINENT DO-MAIN: evidence: boundaries.

of the river in the vicinity of the lot in question. There was no error here; at least none prejudicial to the plaintiffs. It is well understood that meander lines are not considered in law as boundary lines. See cases before cited. Moreover, both parties admitted upon the trial that the high water mark at the time of condemnation was not on the meandered line. It also appears that certain exhibits, introduced by plaintiffs without objection, showed the original meandered line. There was no dispute between the parties at any time as to where the meandered line was.

In the same connection plaintiffs offered photographs and levels taken by a surveyor on tracts south and north of the lot in question. The photographs and levels to the

2. SAME: evidence.

north were of a tract nearly a mile above the tract in question, and those to the south were of a tract eight or ten blocks away from the land condemned. These points were so remote and the tracts so dissimilar in character that we are of opinion the trial court correctly held them inadmissible.

Certain photographs offered by the city, taken at the time of a flood in the river, were received over plaintiffs' objections. They were not offered to show the ordinary high-

water mark, but to reproduce the conditions and surroundings of the property at or about the time of the condemnation. They were admissible for such purpose, and plaintiffs, if they had wished to have them limited to these purposes only, should have asked an instruction to that effect.

Certain instructions asked by plaintiffs, bearing upon the first proposition involved in the case, were refused, and of this complaint is made. Those given, which we have quoted, fully covered the points presented, and, as we have already remarked, were as favorable to plaintiffs as they were entitled to.

II. Upon the question of value, the trial court gave the ordinary instruction as to market value, and, in addition, the following, which are complained of:

13. As applied to this case, the term 'reasonable market value' means the fair and reasonable value of said property at the time in question, as the said value may be determined from considering the evidence in regard to those facts which the owner would properly and naturally press upon the attention of the buyer to whom he is negotiating a sale, and in regard to those facts which would naturally influence or deter a person of ordinary prudence desiring to purchase. Evidence, if any, in regard to the facts which then existed, and which entered into the value of the premises in question in public and general estimation, and which may have tended to influence the minds of sellers and buyers generally, may be considered by you in determining the reasonable market value of said property at said time.

3. SAME: reasonable market value: evidence: instruction.

15. Certain evidence has been admitted in this case bearing upon the question as to the price at which other properties than the property involved in this case were sold by various parties, and of the location and character of such other properties. You are instructed that such evidence has been admitted, and should be considered by you only in connection with, and as bearing upon, the value of the opinions of the various witnesses respectively, in regard to the value of the property in controversy herein, and the same should not be considered by you as evidence bearing independently upon the value of

the property in controversy at the time in question, or as evidence tending to fix the value of said property at said time.

The first of these is a little out of the ordinary as given in such cases; but we see no prejudicial error therein. The facts referred to might properly be considered by the jury in arriving at its final conclusion in the case. Such matters were received in evidence; that is to say the experts on either side took them into account in giving their opinions—those for the plaintiffs pressing upon the attention of the jury the talking points from their standpoint, and the witnesses for the defendants pointing out the objections to the property. It was entirely legitimate, in view of this testimony, for the trial court to instruct with reference thereto. The instruction has some support in *Ranck v. City*, 134 Iowa, 563; *Youtzy v. City*, 150 Iowa, 53. More directly in point are *Railway Co. v. Brown*, 15 Colo. 193 (25 Pac. 87); *Russell v. Railroad*, 33 Minn. 210 (22 N. W. 379); and *Alloway v. Nashville*, 88 Tenn. 510 (13 S. W. 123, 8 L. R. A. 123).

In any event the instruction was without prejudice.

III. Aside from some minor questions as to rulings on evidence, which were either correct or nonprejudicial, and an insistent claim that the verdict is without support in the testimony, the main and really the only debatable question in the case arises out of instruction 15, before quoted; and some rulings on the rejection of testimony as to the selling price of similar property at or about the time the condemnation proceedings were begun.

We may here remark parenthetically that there was a decided conflict in the testimony regarding the value of the property, and a very wide divergence of opinion among the experts as to its true market value; some of plaintiffs' witnesses valuing it at considerably over $100,000, and some of defendants' witnesses placing it at less than the jury's award. In this connection we here quote another instruction given by the trial court, of which no complaint is made:

Your verdict in this case must be guided by these instructions, and must be based upon and found from the evidence introduced upon the trial, and, in considering the evidence and in arriving at the truth of the controversy involved herein, you have the right to use your knowledge of affairs generally in connection with the testimony as to the values which have been given by the witnesses. By this is meant that you are not obliged to rely wholly upon the opinions of the witnesses as to the value of the premises in question, but that in connection with such opinions you may use, and be guided by, your own judgment on such matters in reaching your final conclusion. You cannot disregard the evidence and fix the value of said property arbitrarily or in accordance with your own notion, but you should exercise your own judgment and knowledge as suggested above only in connection with the testimony; that is to say, by taking the testimony into consideration and testing it in the light of your own intelligent judgment, and in harmony with these instructions, you should draw therefrom what you believe to be the proper conclusion in regard to the value of the said premises involved in this controversy at the time in question.

This instruction announces the law as settled by many of our cases, and furnishes one key for the solution of the problem now mooted, to wit: Is the verdict so barren of testimony that we should set it aside? Manifestly we would not, under the record, be justified in doing so if the law was correctly stated in the instruction last quoted.

That the rule announced is correct, and that even a wider discretion might have been imposed on the jury, see *Ranck v. City,* 134 Iowa, 574; *Hoyt v. Railroad,* 117 Iowa, 296; *Youtzy v. City,* 150 Iowa, 53.

The serious question in the case is the right of the plaintiffs to show, as substantive, independent proof of value, what

4. SAME: evidence of value: sale of other property.

property of the same character, similarly located, sold for in the market a short time after the condemnation proceedings were instituted. Such testimony was received by the court, and finally stricken out on motion, and finally the fifteenth instruction was given to cover the point.

Upon no rule of evidence has there been a greater divergence of opinion among courts and text-writers than this one; and courts of any given jurisdiction have not been consistent in their holdings, and refinements have so often been made according to some text-writers that the only solution of the matter is to say that it is within the sound discretion of the trial court to either admit or reject the testimony. Indeed, some of the courts whose opinions are cited in support of the rule admitting such testimony have finally said that the matter was discretionary with the trial court. See *Shattuck v. Railroad,* 6 Allen (Mass.) 115; *Presbrey v. Railroad,* 103 Mass. 1; *Bemis v. Temple,* 162 Mass. 342 (38 N. E. 970, 26 L. R. A. 254); *Stinson v. Railroad,* 27 Minn. 284 (6 N. W. 784); *Laing v. Railroad,* 54 N. J. Law, 576 (25 Atl. 409, 33 Am. St. Rep. 682). But see *Curley v. Jersey City,* 83 N. J. Law, 760 (85 Atl. 197, 43 L. R. A. [N. S.] 985); *Washburn v. Railroad,* 59 Wis. 364 (18 N. W. 328); *Haines v. Ins. Co.,* 52 N. H. 467; *In re Thompson,* 127 N. Y. 463 (28 N. E. 389, 14 L. R. A. 52).

If these decisions proceed upon the theory that it is within the discretion of the trial court to decide primarily upon the question of the similarity of the property or the remoteness of the sales, they may, perhaps, be logically sustained. But if, as some of them seem to say, it is discretionary with the court to admit or reject such testimony, conceding similarity and that the sales were not too remote, then we think there is no such middle ground. The testimony is either admissible or it is not, and there is no halfway point in principle.

Without going more deeply into the question, it will be found in examining the cases that the rule of admission is founded upon the principle that there is no better method for determining the market value of any piece of property at a given time than to show what other property similar in location and character has voluntarily been sold for at or about the time in question. Some cases say that this is the best testimony which can be adduced: *Chicago R. R. v. Rottgering* (Ky.), 83 S. W. 584. Other cases say that such testimony

is entirely inadmissible when the property has a market value, on the ground that it is the general selling price of property in the neighborhood which is the test of value, and which must be taken into account by experts who give their opinions as to its value, and not the price paid for particular pieces of property; that to permit evidence in chief of particular sales is to let in collateral questions which will lead to confusion and error. *Pittsburg R. R. v. Patterson,* 107 Pa. 461; *Stinson v. Railroad,* 27 Minn. 284 (6 N. W. 784); *Selma R. R. v. Keith,* 53 Ga. 178; *Matter of Thompson,* 127 N. Y. 463 (28 N. E. 389, 14 L. R. A. 52); *Kerr v. South Park Co.,* 117 U. S. 379 (6 Sup. Ct. 801, 29 L. Ed. 924); *Union R. R. v. Moore,* 80 Ind. 458. Among the cases admitting such evidence, are the following: *Seattle Co. v. Gilchrist,* 4 Wash. 509 (30 Pac. 738); *Edmands v. Boston,* 108 Mass. 535; *Pierce v. City,* 164 Mass. 92 (41 N. E. 227); *Concord R. R. v. Greeley,* 23 N. H. 237; *Mayor v. Smith Co.,* 80 Md. 458 (31 Atl. 423); *Matter of Forsythe Boulevard,* 127 Mo. 417 (30 S. W. 188). Prof. Wigmore, in his work on Evidence, vol. 1, section 463, says:

There is, however, one question indirectly involving a rule of evidence—the question whether the value of another article is receivable in order to show the value of the article in issue. As the price at a sale is, by the law of damages, conceded to be an element in the test of value (except perhaps in forced sales), this question is usually presented in the form whether a sale of other property is admissible as evidence of the value of the property in question. In answering this question, it is found that the two leading principles already expounded come into joint application—the principle of relevancy and the principle of auxiliary policy. According to the former, the value or sale price of the other property is irrelevant, unless the property is substantially similar in condition; according to the second, it may also be excluded, though relevant, if it involves in the case in hand a disproportionate confusion of issues and loss of time. The latter consideration has weighed so much with a few courts that they have treated it as requiring the absolute and invariable exclusion of such evidence. It is enough to note: (1) In answer

to the argument from relevancy that, since value is a money estimate of a marketable article possessing certain definable qualities, the value of other marketable articles possessing substantially similar qualities is strongly evidential, and is so treated in commercial life. All the argument and protestation conceivable cannot alter the fact that the commercial world perceives and acts on this relevancy. (2) In answer to the argument from auxiliary policy, it may be noted that this objection may or may not exist in a given instance, and that the rational and practical way of meeting it is to allow the trial court in its discretion to exclude such evidence when it does involve a confusion of issues, but otherwise to receive it—a solution already considered in its general application to the present subject. Except in a few jurisdictions, this class of evidence is received. In Massachusetts and in New Hampshire the principle of leaving the matter to the trial court's discretion to determine both the substantial similarity of condition and the confusion of issues is well carried out. In some jurisdictions its use is limited to the testing of value witnesses on cross-examination. Even in the jurisdictions where it is rejected its force is so far recognized that numerous absurd quibbles become necessary in order to distinguish between that which is rejected and that of which common sense compels a hearing. The doctrine of admission moreover, is sometimes recognized for evidencing the value of services or chattels, when not recognized for land value.

It will be noticed from this quotation that the learned author finally adopts the rule that it is discretionary with the trial court. The rationale of the rule rejecting such testimony is well stated in the following quotations:

In *East R. R. v. Hiester*, 40 Pa. 55, the court of that state said:

If allowed, each special instance adduced on the one side must be permitted to be assailed and its merits investigated on the other; and thus there would be as many branching issues as instances, which, if numerous, would prolong the contest interminably. But even this is not the most serious objection. Such testimony does not disclose the public and general estimate, which in such cases we have seen is a test of value. It would be as liable to be the result of fancy,

caprice, or folly as of sound judgment in regard to the intrinsic worth of the subject-matter of it, and consequently would prove nothing on the point to be investigated. The fact as to what one man may have sold or received for his property is certainly a collateral fact to an issue involving what another should receive, and, if in no way connected with it, proves nothing. It is therefore irrelevant, improper, and dangerous.

Parker, J., in *Matter of Thompson*, 127 N. Y. 468 (28 N. E. 389, 14 L. R. A. 52), made the following observations:

If [such sales are] some evidence of value, then prima facie a case may be made out so far as the question of damages is concerned by proof of a single sale, and thus the agreement of the parties, which may have been the result of necessity or caprice, would be evidence of the market value of land similarly situated and become a standard by which to measure the value of land in controversy. This would lead to an attempt by the opposing party to show: First, the dissimilarity of the two parcels of land; and, second, the circumstances surrounding the parties which induced the conveyance, and such as a sale by one in danger of insolvency, in order to realize money to support his business, or a sale in any other emergency which forbids a grantor to wait a reasonable time for the public to be informed of the fact that his property is in the market. Or, on the other hand, that the price paid was excessive and occasioned by the fact that the grantee was not a resident of the locality, nor acquainted with real values, and was thus readily induced to pay a sum far exceeding the market value. Thus each transaction in real estate claimed to be similarly situated might present two side issues which could be made the subject of as vigorous contention as the main issue, and, if the transactions were numerous, it would result in unduly prolonging the trial and unnecessarily confusing the issues, with the added disadvantage of rendering preparation for trial difficult.

Without more it is sufficient to say that we have, after a full discussion of the matter and a review of the authorities, adopted the Pennsylvania and New York rule in *Watkins v. Railroad*, 137 Iowa, 441. This is conceded by counsel for

appellants; but they insist that the rule is wrong, and should now be abandoned before any more damage is done. We are not so convinced by the argument of the unsoundness of this rule that we feel justified in abandoning it in so short a time after its adoption, if at any time. There is much to be said in favor of either rule, and the important point is to have it settled so that all may understand it in the future, and not be subject to the hazards of a change in each and every case where it may arise in the future.

The trial court followed the *Watkins* case, after carefully studying it, and, in effect, changed its ruling because of that case. True, that was in some respects a departure from the previous case of *Town of Cherokee v. Town Lot Co.*, 52 Iowa, 279, but that case was in itself somewhat of a departure from the prior rule of *King v. Midland R. R.*, 34 Iowa, 458. It will thus be observed that it was believed essential in the Watkins case to settle the rule. If we were now to change, no one can tell what the rule may be in the future. It might depend upon the personnel of the bench, or upon a change of view of a majority of the judges, and could not be said to be finally settled at any time.

If the rule of discretion were adopted, there would be much reason for saying that the trial court did not abuse its discretion because of the peculiar character of the property condemned. It seems that at one time a small creek ran through the lot which was practically on a level with the river for some distance from its outlet. More recently this was converted into a storm sewer, and this sewer drained several blocks of the city. This sewer runs east and west through the lot near its center, and since its construction the old channel of the creek has been filled with refuse of all sorts; the lot being used as sort of a dumping ground. Moreover, the east line of the lot is the Des Moines river, which necessitates the building of a retaining wall, or, until the lot is improved, it is subject to the washing of the river.

No voluntary sales of other property of similar character

were shown. But we do not place the ruling on that ground alone. The remark is made to show that even the Massachusetts rule, as it is called, would not call for a reversal. Knowledge of the sales of other property in general, and of other property so nearly similar as was possible under the circumstances, were shown to qualify some of the witnesses, and lack of knowledge of sales to diminish the weight of the testimony of others was also shown; and in this way each party, we must assume, had the benefit of the testimony in so far as it properly affected the reasonable market price of the property in question.

Under the testimony it is doubtless true that we would have made a larger award had we been trying the case, but, in view of the verdict of the jury and the conclusion of the learned trial judge, we are not justified in saying that the award is so small as to evidence that it was not based upon the testimony, but upon passion or prejudice.

We find no reversible error, and the judgment must be, and it is—*Affirmed.* All the Justices concur.