THEOPHILUS P. CHANDLER & another, trustees, *vs.* JAMAICA POND AQUEDUCT CORPORATION.

Norfolk.    Jan. 24. — Mar. 7, 1877.    MORTON & ENDICOTT, JJ., absent.

On the assessment of damages for the taking of land for a public use, evidence of a sale of another lot of land a thousand feet off, in another town, three years after the taking, and after a general rise in the value of lands in both towns, the lot being similar to the land taken only in being low land traversed by a brook, and dissimilar in access from streets, nearness to houses and likelihood of coming into the market, is inadmissible, and its admission is a subject of exception.

PETITION to the Superior Court for a jury to assess damages sustained by the petitioners by reason of the taking, on April 28, 1870, by the respondent, under the St. of 1868, c. 182, of about 100,000 feet of land in West Roxbury.

At the trial, before *Wilkinson*, J., the petitioners called witnesses as to the character and value of the land, who testified that, at the time of the taking, the land did not front upon any street, being surrounded upon two sides by land of the respondent, upon the third side by land of one Nickerson, and upon the fourth side by a parcel of land owned by the petitioners, containing about 31,000 square feet, lying between the lot in question and a highway called Pond Avenue; that the parcel of

31,000 square feet was lower than the land in question, being traversed by a brook; and that in 1870 or 1871, there began a general rise and advance in the value of lands in the towns adjoining Boston, which continued several years.

Horace James, afterwards called by the petitioners, testified that he had been a selectman in Brookline for ten years prior to 1876; that in the year 1873 the town of Brookline purchased of the heirs of Moses B. Williams a parcel of land in Brookline, about 1000 feet distant from the land in question, for a town stable; that it was then surrounded by streets on three sides, forty or fifty feet wide, with sidewalks for nearly the whole front of the parcel; that, when purchased, it was separated only by one of said streets from another parcel of land, which had been sold in small pieces by one Hart, and was then occupied, in part, by laboring men and their families; that the town lot was similar to the land in question only in this, that each consisted of low land and was traversed by a brook; that the two lots were dissimilar in respect to their access to streets, and were also dissimilar as to their nearness to other houses, and as to the likelihood of their coming into the market; that the town lot would find many more purchasers than the land in question; that there were perhaps half a dozen houses within three minutes' walk of the land in question, large houses standing upon large lots of land; and that there had been but few sales near the land in question. The petitioners then asked James the price paid for the town lot. The respondent objected, but the judge allowed the question to be put, and the witness answered, "twenty cents a foot."

The jury returned a verdict for the petitioners; and the respondent alleged exceptions.

*M. Williams, Jr.*, for the respondent.

*A. D. Chandler*, for the petitioners.

GRAY, C. J. In estimating the value of a lot of land taken for a public use, actual sales of similar lands in the vicinity, about or before the time of such taking, are admissible in evidence; and the question whether such other lands are sufficiently like the land taken, and such sales sufficiently near in point of time, to make the evidence competent, is largely within the discretion of the judge or officer presiding at the trial.

*Shattuck* v. *Stoneham Branch Railroad*, 6 Allen, 115. *Benham* v. *Dunbar*, 103 Mass. 365. *Green* v. *Fall River*, 113 Mass. 262.

But his discretion in this respect is not unlimited. If he excludes sales of lands lying very near the land in question, upon the ground that they are too remote ; *Paine* v. *Boston*, 4 Allen, 168 ; or if he admits sales of lands so dissimilar in situation and circumstances and in the uses to which they may be appropriated, that the court can see that such sales could afford no just measure of the value of the land taken, it is a matter of exception. *Boston & Worcester Railroad* v. *Old Colony Railroad*, 3 Allen, 142, 146. *Presbrey* v. *Old Colony Railroad*, 103 Mass. 1, 9.

We have not been referred to any case in which sales of other lands, at a later date than at or about the time of the taking of the land of the petitioner, have been held competent as independent evidence. In *Whitman* v. *Boston & Maine Railroad*, 7 Allen, 313, 318, the subsequent sale was of part of the same land by the petitioner himself, and was admitted upon his cross-examination, and the decision overruling an exception to its admission was ultimately put upon the ground that " great latitude of cross-examination might test the accuracy and fairness of the witness." The presumption of the continuance of a state of things once proved to exist may give rise to an inference that it has not since been changed ; but it has no tendency to prove that it had existed previously, or, as is sometimes said, presumptions do not run backwards. Stark. Ev. (4th ed.) 76, 761. *Hingham* v. *South Scituate*, 7 Gray, 229, 233.

In the present case, the other lot was not only a thousand feet off and in another town, but it was similar to the land taken only in being low land traversed by a brook. The two lots were dissimilar in respect of access by streets, of nearness to other houses, and of likelihood of coming into the market ; and the sale was made three years after the taking of the petitioners' land, and after a general advance in the value of lands in both towns. We are of opinion that the evidence was incompetent and likely to mislead and prejudice the jury, and that its admission requires the verdict to be set aside.

*Exceptions sustained.*