FRANKLIN F. PATCH *vs.* CITY OF BOSTON.
SAME *vs.* SAME.

Suffolk.   November 15, 1887. — January 9, 1888.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Land Damages — Evidence — Tribunal — Boston — Court-House.*

Under the St. of 1885, c. 377, authorizing commissioners to take land in Boston for a new court-house and providing that damages should be assessed as "in case of the laying out, altering, or discontinuing of ways within the city of Boston," such damages are to be assessed in the first instance by the street commissioners of Boston, and not by the court-house commissioners.

On the assessment of damages for land taken by a city, evidence of the cost of a recent addition to the house thereon is inadmissible.

A declaration of opinion as to the value of land taken by a city, made by the owner and occupant for seventeen years to an assessor over a year before the taking, and also before an addition was built to the house thereon, is competent as an admission against such owner.

On the assessment of damages for the taking by a city of land with a building thereon, evidence was offered on the part of the city of the price at which neighboring estates in the same street with buildings thereon were sold a few months after the taking, it appearing that the effect of the taking had been, if any, to increase the value of such property. *Held*, that, in the absence of proof that the buildings were dissimilar, the evidence was rightly admitted.

TWO PETITIONS for juries to assess damages for the taking of land in Boston for a new court-house. The cases came on for trial together in the Superior Court, before *Blodgett*, J., who dismissed the first petition and allowed a bill of exceptions, which appear in the opinion.

*E. W. Hutchins*, for the petitioner.

*T. M. Babson*, for the respondent.

C. ALLEN, J. This was a petition to the Superior Court, setting forth that the petitioner was the owner of a parcel of land on Somerset Street in Boston; that the court-house commissioners appointed by the Mayor of Boston had taken said land for a court-house, under the St. of 1885, c. 377; that he had been offered by said commissioners a very much less sum than the damages sustained by him; and praying that his damages might be ascertained by a jury, at the bar of the Superior Court.

It appeared that the street commissioners also had made an award of damages for the same taking, with which the petitioner was dissatisfied, and accordingly he had filed another petition praying that his damages might be ascertained by a jury, at the bar of the Superior Court.

Both of these petitions came on to be heard together in that court, and after the reading of the petitions and answers the petitioner declined to elect upon which petition he would go to trial. No objection to the form of proceedings was made by the city in either case, but in the answer to each petition the city said that, if any land or property of the petitioner had been taken for any public use of the city of Boston, the city was, and ever since such taking had been, ready and willing to pay all damages caused thereby, for which it was liable. Under these circumstances, the petitioner declining to elect which petition he would go to trial on, the court ruled that the court-house commissioners had no authority to award damages for the taking of the petitioner's land, but that the street commissioners of the city of Boston were the persons to award the damages, and therefore that the present

petition could not be maintained. The parties went to trial upon the other petition, without any exception being saved by the city, and the petitioner's damages were assessed by the jury.

By the St. of 1885, c. 377, the board of commissioners appointed by the mayor is authorized to take land for a court-house, by purchase or otherwise, and the city is to be liable to pay all damages that shall be sustained by any person or persons by reason of the taking of such land; such damages to be ascertained and determined in the manner provided for ascertaining and determining damages in case of the laying out, altering, or discontinuing of ways within the city of Boston. In Boston, such damages are determined in the first instance by the street commissioners; that is, they have the same power in Boston as county commissioners in other counties, and this includes the estimate of such damages. Pub. Sts. c. 49, §§ 14, 84. A party aggrieved by the doings of the street commissioners in the estimation of damages may apply for a jury by petition to the Superior Court. Pub. Sts. c. 49, § 86.

Under a statute somewhat similar to the one now under consideration, namely, the St. of 1864, c. 104, authorizing the city of Worcester to supply itself with water, and providing that all damages should be assessed in the manner provided in the general laws in regard to highways, it was held that a claimant should petition in the first instance to the county commissioners. *Worcester* v. *County Commissioners*, 100 Mass. 103. To a similar effect is *Riley* v. *Lowell*, 117 Mass. 76. Certain differences in matters of detail have been pointed out by the counsel for the petitioner, but the reasons assigned by the court in those cases, in substance, cover the present case.

If the legislature had intended that the court-house commissioners, being a special body created for the particular purpose, should make the assessment of damages, they would have been likely to say so in express terms. Usually, we believe, when any special board or committee is to make the first assessment of damages, the statute plainly so provides. But where the provisions in reference to the ascertainment of damages is merely a general one, referring to the mode of ascertaining damages in other cases of frequent occurrence, it is natural and reasonable to suppose that all the incidents of such mode are included, as

far as the same are applicable. Especially should this construction be given to the St. of 1885, c. 377, which contains no express provision for a jury in any case. If the legislature had meant that the court-house commissioners should assess the damages in the first instance, it would have been natural and probable that an express provision for a jury would have been inserted. But if they meant that the street commissioners should assess the damages, there was no occasion for such special provision, as the general provision already referred to would cover it. On the whole, we think it the better construction of the statute to hold that the duty of estimating damages in the first instance belonged to the street commissioners. *Exceptions overruled.*

THE trial proceeded upon the second petition, and the petitioner testified that about May 1, 1885, three months before the taking, he built an addition to the L of his dwelling-house, making it a story higher, whereby another room was added to the building, and offered to show the cost of the addition. The judge ruled that evidence of the cost of the addition was incompetent, and excluded it.

On cross-examination, the petitioner was asked whether he had not stated to one Browne, an assessor, in 1884, that his house was worth less than $22,000, to which he replied that he had not. The respondent afterwards offered to show by Browne, that in the first week in May, 1884, Browne and his clerk met the petitioner coming out of his house, and he asked them what his house was taxed for; that they told him that in 1883 it was taxed for $22,000, and that the petitioner said, " That is too much; you ought to reduce it; it is more than it will sell for; it is more than it is worth; " that Browne said he could sell it for him for that, and that the petitioner said he did not want to sell, but it was more than it was worth. To this evidence the petitioner objected, but the judge admitted it. Except as stated, there was no evidence that the petitioner was acquainted with the value of the property, or that he was fitted to give an opinion upon it, and he was not asked by either side what his opinion of its value was. The petitioner had owned the estate for about seventeen years, and during that time occupied it as his dwelling-house, until within a few months before the taking

The respondent offered to put in evidence the price at which two other pieces of land, with buildings upon them, on Somerset Street, near the estate of the petitioner, were sold in 1886, a few months after the taking, it appearing that the effect of the taking had been, if any, to increase the value of such property. To this evidence the petitioner objected, but the judge found that the estates were situated similarly to that of the petitioner, and admitted the same.

The jury returned a verdict assessing the petitioner's damages; and the petitioner, being dissatisfied therewith, alleged exceptions.

*E. W. Hutchins*, for the petitioner.

*T. M. Babson*, for the respondent.

C. ALLEN, J.   The exceptions in the present case present three questions as to the exclusion and admission of testimony.

1. The first question is as to the exclusion of the testimony offered by the petitioner as to the cost of the addition to the L. As a general rule, the market value of the property is the measure of damages.   Ordinarily, the cost is not material, and especially the cost of some particular improvement, which, however convenient to the owner, may not correspondingly increase the market value.   In the case of goods which are constantly manufactured and sold in the market, evidence of the cost has been received, as having a direct tendency to show the value. *Clement* v. *British American Assurance Co.* 141 Mass. 298, 301. But the addition of special improvements in buildings does not fall within the same reason.   *Allen* v. *Boston*, 137 Mass. 319, 321.   In the present case, all that was offered in evidence to make the cost admissible was, that, three months before the taking the plaintiff built an addition to the L of his dwelling-house, making it a story higher, whereby another room was added to the building.   There was nothing to show that the cost of this addition would aid in determining the market value of the whole estate, or that the value of the whole estate would depend closely on the cost in detail of improvements made upon it from time to time.   We see no error in the exclusion of the testimony.

2. The objection, that an owner and occupant of a house for seventeen years must be shown to be qualified to judge of the value of real estate, before his expressed statement of an opinion

of its value can be received in evidence against him, savors of too much refinement for practical purposes, and cannot be adopted. Usually such owner and occupant may be presumed to have a sufficient opinion of the value of his property to make his admission competent against himself. See *Flint* v. *Flint*, 6 Allen, 34. *Whitman* v. *Boston & Maine Railroad*, 7 Allen, 313. The other objections to his opinion go rather to the weight and importance than to the competency of the statements, and cannot prevail. Much must be left to the discretion of the presiding judge in determining whether the time was too remote, and the condition of the property too dissimilar, to make the evidence valuable; and exceptions should not be sustained on such grounds, unless a manifest error has been committed. *Shattuck* v. *Stoneham Branch Railroad*, 6 Allen, 115, 117. *Chandler* v. *Jamaica Pond Aqueduct Co.* 122 Mass. 305.

3. The last exception taken by the plaintiff was to the admission in evidence of the prices at which two other estates on the same street, and near the plaintiff's estate, were sold, a few months after the taking. It is admitted that ordinarily sales of other similar lands in the vicinity, at or about the time in question, may be shown. *Chandler* v. *Jamaica Pond Aqueduct Co.*, *ubi supra*. But it is contended that the rule does not include sales of land with buildings thereon, or sales made so long afterwards, and after there had been a change of value. If it had appeared that the buildings upon the lots which were sold were quite unlike those upon the plaintiff's land, there would be force in the objection; but this does not appear. Houses on the same street in a city often correspond closely in style, cost, and value. The mere fact that buildings were upon the land does not of itself have the effect to vary the rule of law that sales of other similar lands may be shown, upon the question of value; but it is in such case, as in all others, to be determined by the court whether on the whole there was such a general similarity that the price obtained on the sale of one estate may fairly tend to show the value of the other. The objection founded on the time when the sales were made has at first sight more plausibility; but the aspect of the case, at the time the evidence was admitted, must be considered. The city did not ask to have any allowance made by reason of an increase of value after the tak-

ing, but offered evidence to show that, even with such increase in value as may have resulted from the taking of land for the court-house, estates in the vicinity had been sold at rates lower than the plaintiff claimed as the value of his property. It might, indeed, have been different if the respondent had asked the jury to form an opinion as to the rise in value, and to make allowance for that; but the position of the respondent, as we understand the bill of exceptions, was just the reverse; the respondent in substance said, " We will offer as a standard sales made at a later date, when the effect, if any, had been to increase the value of such property; we will give you the benefit of that; and even then your claim is excessive."

There was nothing to show that in point of fact there had been any substantial increase of value, or that it was contended before the jury that there had been. It must now be presumed that the city made no claim on the ground of any such supposed increase of value; and in this aspect the plaintiff has no ground of exception.                              *Exceptions overruled.*