EDWARD CERESOLA (afterwards by the administratrix of his estate) *vs.* JOSEPH F. PAUL COMPANY.

Suffolk.   March 7, 1916. — June 20, 1916.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Evidence,* Remoteness, Competency.

In an action for personal injuries sustained by the plaintiff's intestate by reason of one of the rungs of a ladder coming out or breaking at one end when the intestate was going up the ladder, evidence that ten months after the accident the intestate had "yellow-jaundice" and was taken to a hospital, where he died two days later, and that when he was taken to the hospital he said, in answer to a question from the doctor in attendance as to his habits, "that he drank daily twelve whiskeys and twelve beers and used one to two boxes of cigarettes a day," is not competent upon the issue of liability, there being no presumption that such excessive use of intoxicating liquor and tobacco existed as a habit at any certain previous point of time, and such excessive use ten months after the accident being incompetent to show that the intestate was drunk or under the influence of intoxicating liquor at the time of his injury.

In the same case there was evidence that when the plaintiff's intestate was injured by falling from the ladder he was taken to a hospital, that he left the hospital at the end of seven days, that a month later he told his brother that his back bothered him and that he was unable to work, that four months after his injury he told a former fellow workman that he was unable to do any work and had not done any since the time of the accident and that seven months after his injury he told another person that his back was not yet well. *Held,* that on the issue of damages the intestate's reply to the doctor in regard to the extent of his daily use of intoxicating liquor and tobacco was material and relevant as tending to show that the intestate's inability to labor was not attributable entirely to his fall from the ladder.

TORT by Edward Ceresola, and afterwards by the administratrix of his estate, to recover damages for personal injuries sustained

by him on May 1, 1912, when he was in the employ of the defendant, with a first count alleging a defect in the ways, works or machinery of the defendant, and a second count alleging that the plaintiff's intestate in the exercise of due care was using a ladder in the service of and in obedience to an order of the defendant and was thrown to the ground and severely injured owing to a rung of the ladder pulling out or breaking or parting from the stringer. Writ dated August 15, 1912.

In the Superior Court the case was tried before *King*, J.

The plaintiff offered evidence tending to prove that her intestate was a tallyman in the employ of the defendant, that about ten o'clock on the morning of the day of the accident he went on an elevator to a landing about thirty feet from the ground and tallied lumber which was being passed out to load on a team; that at twelve o'clock he ceased work when the place closed down for the noon hour; that on returning after his dinner he was sent by the man in charge of the place and work up a ladder to the place where he had been working during the forenoon, the elevator not being available at this time; that this ladder stood in an upright and almost perpendicular position, and that when the deceased, Ceresola, had gone up about thirty or thirty-five feet one of the rungs of the ladder came out or broke at one end or his foot slipped; that he reached to grasp the side of the ladder, missed it and fell to the ground; that he was picked up in a semi-conscious condition and removed in an ambulance to the Boston City Hospital where he remained for seven days; that he had not been on this ladder before for nearly a month; that the sides of the ladder were two and one half inch spruce with holes bored clear through for the rungs; that the rungs were all the same size, without any shoulders or anything to prevent them from running through during a dry spell, the ladder being exposed to the sun; that it was old and dilapidated; that on several previous occasions the rungs had been loose and that the man in charge of the work knew it.

The deceased, on leaving the hospital seven days after the injury, roomed on Falmouth Street opposite his sister and took his meals with her for a few weeks after the accident. About a month after the accident he met his brother on the street and complained that his back bothered him and that he was unable to do any work. One Pearson, called by the plaintiff, said that he had

known the deceased for several years and was a fellow employee at the time of the accident, that he was the first to reach the deceased when he fell from the ladder, that he met the deceased about Labor Day of 1912 and that the deceased told him that he was unable to do any work and had not done any since the time of the accident. The administratrix testified that the deceased called on her at Christmas time and complained that his back was not yet well. The plaintiff offered no evidence of the condition of the deceased after Christmas, but stated before the jury that she did not claim any damages for the death of the deceased nor claim that the accident had anything to do with his death.

The defendant introduced the record of the Boston City Hospital, which showed that the plaintiff arrived there in an ambulance in less than fifteen minutes from the time of the accident and that he remained there for seven days. The record was silent as to whether or not the plaintiff had taken any liquor at the time he arrived at the hospital, but contained the statement that his foot slipped and he fell thirty-five feet.

The defendant called one Flanagan for whom the plaintiff's intestate worked as a cook in October, 1912, for a week or two at a time. Flanagan said that the deceased did not complain about the injury nor the accident.

The defendant's evidence tended to show that the plaintiff's intestate was under the influence of liquor at half past nine o'clock or ten o'clock on the morning of the day of the accident. The plaintiff's evidence tended to show that he was sober at that time and also at the time he was hurt.

The defendant offered to show, by the testimony of a doctor in attendance at the Boston City Hospital, that on March 17, 1913, which was two days before the death of the intestate, the intestate said to the doctor, in answer to the question as to what were his habits, that he drank daily twelve whiskeys and twelve beers and used one to two boxes of cigarettes a day.

This evidence was offered both on the question of liability and on the question of damages. The judge ruled as follows: "On the question of liability I sustain the objection and refer particularly to the case of *Hamsy* v. *Mudarri*, 195 Mass. 418, and I save the rights of the defendant."

On March 17, 1913, the deceased was taken to the Boston City

Hospital "suffering from yellow-jaundice," and died on March 19, 1913.

The jury returned a verdict for the plaintiff in the sum of $200; and the defendant alleged exceptions.

*C. S. Knowles,* for the defendant.

*P. J. Donaghue,* for the plaintiff.

PIERCE, J.   The testimony that the plaintiff's intestate, ten months after his injury, in response to a question as to his habits said that he drank daily twelve whiskeys and twelve beers and used one to two boxes of cigarettes a day, properly was excluded on the issue of liability.   It had no tendency to show that the intestate was drunk or under the influence of intoxicating liquor at the time of the accident.   *Carr* v. *West End Street Railway,* 163 Mass. 360.   *Edwards* v. *Worcester,* 172 Mass. 104.   *Hamsy* v. *Mudarri,* 195 Mass. 418.   There is no presumption that his daily abuse of the use of intoxicating liquor and tobacco existed as a habit at any certain previous point of time.   *Hingham* v. *South Scituate,* 7 Gray, 229, 233.   *Chandler* v. *Jamaica Pond Aqueduct,* 122 Mass. 305, 307.

Nevertheless, we are of opinion that the evidence upon the issue of damage was material and relevant.   It tended to show that the inability to labor of the intestate was not attributable entirely to the accident but in part was due and chargeable to voluntary and reprehensible self-inflicted physical harm.

In the opinion of a majority of the court, the new trial should be confined to the question of damages.   St. 1913, c. 716.

*Exceptions sustained.*