UNITED NEW JERSEY RAILROAD AND CANAL COMPANY AND PENNSYLVANIA RAILROAD COMPANY, LESSEE, NEW YORK BAY RAILROAD COMPANY AND PENNSYL-VANIA RAILROAD COMPANY, LESSEE, THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, THE LONG DOCK COMPANY, DELAWARE, LACKAWANNA, ETC., RAILROAD COMPANY, LEHIGH VALLEY RAILROAD COMPANY OF NEW JERSEY, LEHIGH VALLEY HARBOR TERMINAL RAILWAY COMPANY, PROSECUTORS, v. THE STATE BOARD OF TAXES AND ASSESSMENT, NEWTON A. K. BUGBEE, COMPTROLLER OF THE TREASURY, AND THE MAYOR AND ALDERMEN OF JERSEY CITY, DEFENDANTS.

Argued June 8, 1926—Decided October 7, 1926.

1. In these cases, there are fifty-five separate pieces of railroad property assessed by the state board of taxes and assessment. The valuations fixed by that board are affirmed, except as to one piece, viz., the terminal tract of the New York Bay · Railroad Company.

2. In reviewing the assessments made by the state board of taxes and assessment, by the Supreme Court, the rules stated in the cases of *United New Jersey, &c., Railroad Co.* v. *State Board,* 100 *N. J. L.* 131; *United New Jersey, &c., Railroad Co.* v. *State Board,* 101 *Id.* 303, applied.

3. The question involved in fixing the value of the railroad properties in these cases is one of fact.

4. The act creating a board of public utility commissioners, *Pamph. L.* 1911, *p.* 374, § 3, ¶ 18 (H), does not prevent the railroad properties from being assessed at their true value.

5. The primary rule for the construction of tax laws is, each act of taxation from year to year is a separate and distinct thing.

6. The action of the state board of taxes and assessment in fixing values will not be presumed to be illegal, even though it may be based upon a percentage.

On *certiorari.*

Before Justices PARKER, BLACK and CAMPBELL.

For the prosecutors, *Robert J. Bain, Maximilian M. Stallman* and *Albert C. Wall.*

For the defendants, *Edward P. Stout.*

The opinion of the court was delivered by

BLACK, J.   The writs of *certiorari* in these cases bring under review the assessments of railroad property for the year 1924. The assessments or valuations were made as of January 1st, 1924, under the Railroad Tax act of 1884, page 142, as redrafted in 1888, page 269, and the supplements. The assessments were made in the first instance by the state board. Upon complaint being made to the board a hearing was given to the owners of the property assessed. At the hearing, the complaints against the assessments for the year 1924 were consolidated and heard by the state board, testimony was taken, which was returned as part of the record in two printed volumes. There are fifty-five separate pieces of property assessed; twenty-four of these are the identical properties considered by the Court of Errors and Appeals in the case of *United New Jersey, &c., Railroad Co. v. State Board,* 100 *N. J. L.* 131, 182, assessed for the year 1922, and considered again by this court in the case of *United New Jersey, &c., Railroad Co.* v. *State Board,* 101 *Id.* 303, assessed for the year 1923; for a description and identification of the properties there considered and now under discussion, a reference to those cases will be sufficient.

There are seven cases and, as stated, the assessments are for the year 1924. There are fifty-five (55) separate pieces of property assessed described by lot and block numbers.

This court said in the case of *Howard Savings Institution* v. *Mayor, &c., of Newark,* 63 *N. J. L.* 65, 74, that the primary rule for the construction of tax laws is, that in taxation from year to year each act of taxation is a separate and distinct thing, appealing to the law in force, when the tax is laid to support the imposition—assessments are made each year. *United New Jersey, &c., Railroad Co.* v. *State Board of Taxes and Assessment, supra.*

There are twelve reasons filed for setting aside or reducing the assessment in one case; ten and eleven reasons in the other cases. They are substantially the same. The argument, in the brief of the prosecutors varied somewhat, is practically made under one head, viz., that the valuations are in excess of true value, or the assessments were made upon erroneous principles and are therefore excessive, or the yards and rights of way of the prosecutors are permanently devoted to railroad use, and, therefore, have no market value susceptible of enhancement for assessment purposes. The question involved is essentially and primarily one of fact. The last reason may be dismissed as fanciful. It seems strange that with all the litigation over the valuation of these identical properties this point has never before been suggested. As a basis for the argument of the point the act creating a board of public utility commissioners is cited *Pamph. L.* 1911, *p.* 374, § 3, ¶ 18 (II), that act provides, "that no public utility shall, without the approval of the board, sell, lease, mortgage or otherwise dispose of or encumber its property," &c. This point may be dismissed as unsound without further discussion.

This court, in the case of *United New Jersey, &c., Railroad Co.* v. *State Board of Taxes and Assessment, supra;* and in many other cases, discussed and considered at some length the legal principles which should guide the Supreme Court in reviewing valuations made against railroad property by the state board. It would serve no useful purpose to make any further or extended discussion of these settled principles. They are elementary. In the last case cited it was held, the court is required to reverse or affirm, in whole or in part, for "palpable error" made by the state board of taxes and assessment in making the valuations. The testimony of the prosecutors must so preponderate as to overcome the judgment of the state board of taxes and assessment and the testimony that supports it, before the Supreme Court can or should reduce, alter or modify the assessments. This is the legal question or principle involved, as distinguished from the questions of fact. *Long Dock Co.* v. *State Board of Assessors*, 82 *N. J. L.* 21.

This court when reviewing the first assessments made under the act of 1884, speaking through Chief Justice Beasley, said: "We do not consider that we have the right to alter or annul any of the proceedings of this body of officers, except for palpable error, for it is not to be overlooked that the statute in question expressly declares that these assessors shall be entitled to use their personal knowledge and judgment as to the value of property, a capacity with which this court is not endowed by the legislature." *Central Railroad Co. v. State Board,* 49 *N. J. L.* 1, 9. That case was cited with approval by the Court of Errors and Appeals, on this point, in the case of *United New Jersey Railroad and Canal Co. v. State Board,* 100 *Id.* 131; *Long Dock Co. v. State Board of Assessors,* 82 *Id.* 21. The state board is entitled to use its personal knowledge and judgment, under the statute, as to the value of the property, when interpreting, comparing, weighing and considering the evidence. Our reading of the voluminous testimony returned with these writs leads us to the conclusion that we cannot say that the opinions of the expert witnesses produced by the state are based on any false premise insufficient to support their opinions. The experts were legally qualified. The opinions of both sets of experts were based upon facts, with which the state board had to deal under the statute. That statute entitled the members of the board to use their personal knowledge and judgment, in weighing the evidence as to the value of the property, not only when making the assessments in the first instance, but at the hearing of the complaints. One criticism aimed at the opinions of all the experts by each side to this controversy is that such opinions were not based on sales of property similar in character. But these voluminous records demonstrate the difficulty of fixing values of property, by a comparison of sales of other properties, located as these properties are. Such a comparison often depends upon a bewildering variety of circumstances. Such is shown to be the situation in these cases. These properties are in one sense *sui generis.* Little or none of it is sold in the open market owing to the fact that it is located in the harbor of New York. It is held by railroad

and steamship corporations, which seldom part with such property once acquired, in that locality, because of lack of quantity of such land and its urgent necessity to such corporations. The relative market value of the sales of property as evidence, compared with the value of the property under investigation, is a pure question of fact, depending almost upon an infinite variety of circumstances, and, doubtless, it was in anticipation of this situation that the legislature clothed the members of this board with the power to use their personal knowledge and judgment when fixing the value of the property assessed, by comparing it with the sales of other property put in evidence for comparison. The record shows that the members of the state board personally viewed and examined the properties assessed. How can we substitute our opinion for that of the experts and the state board and say that one set of experts is more reliable than the other, except, when it is palpably so, as in the case of one of the properties located on the New York bay? In that case the opinion of the state board is based upon a false premise, insufficient to support the judgment of the state board. How in the absence of actual sales can the value be better demonstrated than by the testimony of persons who are well acquainted with its location and the use to which it can be put, and who are familiar with the property of like character fronting on the Hudson river and bays connected therewith and opposite and adjacent to the city of New York?

There are but three practical courses that are open to us to follow, after reading these voluminous, conflicting and bewildering records. First, affirm the assessments as based upon the evidence of the experts of the state; second, reduce the assessments and adopt the opinions of the expert witnesses of the prosecutors; or third, reject both sets of expert opinions and base a judgment upon our own individual opinion, with or without evidence; thus, eliminating entirely the judgment of the state board. The valuations of these properties were made by the unanimous vote of the state board, and in that situation this court has said, valuations ordered by a unanimous board should not be set aside unless it is

entirely clear that the evidence will not fairly support them. *Delaware, &c., Railroad Co.* v. *State Board,* 98 *N. J. L.* 285.

The conclusion which we have reached in these cases is that the assessments should all be confirmed, except one tract, viz., the terminal tract of the New York Bay Railroad Company at Greenville, which lies between the Morris canal and the exterior line of piers, extending into New York bay, substantially a mile. There is no approach to this tract from the land side except by the railroad. It consists of three hundred and forty-three and one hundred and thirty-seven thousandths acres. The testimony shows there are two hundred and thirty-seven and eight hundred and thirty-seven thousandths filled and used land, one hundred and five and three-tenths acres under water and not developed. This tract is assessed at $25,000 per acre. We think under the evidence one hundred and five acres of this land should be reduced to $16,000 per acre and such will be the order of the court.

These assessments vary somewhat depending upon location. Thus, the properties which may be generally designated as those lying along or contiguous to the Hudson river in the Hudson river zone are assessed from $115,000 per acre to $70,000 per acre. As there are forty-three thousand five hundred and sixty square feet in an acre of land measured by units of city lots, twenty-five by one hundred feet, the assessments are at the rate of from $6,000 to $2,800 per city lot, as against $5,600 assessment per city lot, as the highest for the year 1923. Other assessments in this zone are at the rate of $114,000, $105,000, $108,000, $100,000 and $80,000 per acre. The other properties assessed, lying along or in the tide water basin and the New York bay zone, are assessed from $70,000 per acre to $15,000 per acre. The highest valuation stated by the state's experts of the property located in the Hudson river zone are $140,000 per acre, the lowest $87,000 per acre. In the New York bay zone the highest valuation stated by the state's experts was $35,000 per acre, the lowest $30,000 per acre. As compared with the prosecutor's expert witnesses their highest value was $104,544 per acre, vol. I, p. 233; $80,000 per acre, vol. I, pp. 228, 234,

the lowest value was $50,000 per acre in the Hudson river zone; in the New York bay zone the highest value per acre was $15,000, the lowest value was $7,200 per acre.

The valuations fixed by the state board are in each case substantially and considerably below the figures stated by the state's expert witnesses and in each case the assessments as fixed were affirmed by the unanimous vote of the state board.

The argument of the prosecutors, in their brief, is to the effect that the taxable values of these lands for the years 1922 and 1923 were fixed by the courts, after an exhaustive review in the cases above cited.  Therefore they should not be changed, altered or modified for the year 1924, because the state failed to prove that the lands had a higher value for taxation for the year 1924.  This argument is unsound for four reasons: First, the values affirmed by the courts for the years 1922 and 1923, are not conclusive or binding for the year 1924, such valuations were merely circumstances for the state board to consider; second, each assessment is a separate and distinct thing, assessments under the statute are made each year; third, the values for those years may have been made too low, not at true value; fourth, the values in the judgment of the state board had, in harmony with all real estate values in the New York city zone, advanced.  This is a pure question of fact for the state board to determine.  The other principal argument made by the prosecutors is, the values are erroneous, because the state board of taxes and assessment made the assessments by the application of an arbitrary multiple to certain values found by the board.  Of this we find no evidence to justify such a conclusion.  It will not be presumed to be illegal and if based upon evidence it is not improper.  *Township of Wayne* v. *Laflen, &c., Powder Co.,* 76 *N. J. L.* 175.

A rule may be entered in accordance with the views above expressed.