DIVISION OF TAX APPEALS.

ERIE RAILROAD SYSTEM, APPELLANT, v. FRANK E. WALSH, DIRECTOR OF TAXATION, DEPARTMENT OF TAXATION AND FINANCE, AND CITY OF JERSEY CITY, RESPONDENTS.

CITY OF JERSEY CITY, APPELLANT, v. FRANK E. WALSH, DIRECTOR OF TAXATION, DEPARTMENT OF TAXA-TION AND FINANCE, AND ERIE RAILROAD SYSTEM AND ERIE RAILROAD COMPANY, RESPONDENTS.

Decided January 6, 1948.

For the Erie Railroal System, *Collins & Corbin* (by *Raymond J. Lamb*).

For the City of Jersey City, *Charles A. Rooney* (by *Joseph C. Glavin*).

For the State of New Jersey, *Walter D. Van Riper*, Attorney-General (by *Benjamin Taub*, Deputy Attorney-General).

KREAMER, COMMISSIONER. The Director of the Division of Taxation established certain valuations and assessments for the year 1946 of properties owned or leased by the Erie Railroad Company and used for railroad purposes. Properties in Classes I and III are located within the State of New Jersey but outside of Jersey City; properties in Classes I and II are located within Jersey City. Both Erie and Jersey City filed complaints and appeals to this Division, Erie seeking decreases and cancellations of certain assessments and Jersey City seeking increases of certain assessments.

For purposes of convenience and clarity we will consider first the appeal of Erie. The properties involved under the complaint filed and the various contentions with respect to them are:

(1) Floating equipment (assessed as a portion of Class III property under *R. S.* 54:29A–9; *N. J. S. A.* 54:29A–9) — Erie seeks cancellation of the assessment thereon asserting with respect to the various units of equipment that there is

no taxable *situs* existing in this state and bases this on the following: (a) all units assessed are registered in the Port of New York and have a *situs* for taxation in the State of New York and (b) the domicile of the owner is in New York, the Erie being a corporation of that state. Additionally, it is asserted that the assessment is contrary to the due process clause of the federal constitution, Amendment Fourteen, and is also an undue burden on interstate commerce and thus does violence to article 1, section 8, of the federal constitution.

(2) Grade crossing elimination structures (assessed as a portion of Class I property)—Cancellation of this assessment is also sought, Erie claiming exemption under the provisions of *R. S.* 54:29A–10; *N. J. S. A.* 54:29A–10.

(3) Main stem parcels (parcels A to U on schedule attached to complaint) and second class parcels (parcels 1 to 26 and parcel 52) Erie contends that assessments on these parcels are in excess of the true value standard set forth in *R. S.* 54:29A–7; *N. J. S. A.* 54:29A–7, and guaranteed by article 4, section 7, paragraph 12 of the state constitution, *N. J. S. A.*, are in violation of the due process clause of the federal constitution, are an undue burden on interstate commerce and are made under unconstitutional and illegal statutes.

Our determination as to each of the foregoing classifications of properties under appeal is as follows:

### FLOATING EQUIPMENT.

No testimony was taken by Erie as to this portion of its appeal. The same assessment was made by the Director for the year 1945 and the same grounds of appeal were filed by Erie in that year as are filed in the instant appeal. There was no change in the facts or the law between the assessing dates for 1945 and 1946. Thus counsel for Erie and the state stipulated that the testimony of the 1945 appeal be deemed a part of the record in this case and that the decision of the Division in the 1945 appeal of Erie on this issue be binding on both Erie and the state. Erie, of course, reserved the right to appeal from the decision of the Division.

The record of the 1945 appeal with respect to floating equipment constituting the record of the instant appeal, the judgment entered in that case by the Division must of necessity be the same in this proceeding. The opinion adopted by the Division in connection with the judgment of dismissal of the 1945 appeal on this issue sets forth the statute under which the assesment was made, the basis of the finding by the Division, and the applicable law. See *Erie Railroad System* v. *Walsh,* 25 *N. J. Mis. R.* 269; 53 *Atl. Rep.* (*2d*) 155. No good purpose would be served to repeat these factors here. However, Erie has applied to the Supreme Court for a writ of *certiorari* with respect to the 1945 judgment and pending final determination upon the writ, entry of a judgment on this phase of the 1946 appeal will be withheld.

### GRADE CROSSING ELIMINATION STRUCTURES.

As in the previous item under appeal, counsel stipulated that the record of the 1945 appeal as to this item be deemed a part of the record of this appeal and that the 1945 decision of the Division be binding here.

For the reasons forming the basis of the judgment of the Division in the 1945 case see *Erie Railroad System* v. *Walsh, supra.* In that opinion it is stated that the principle on which the claim for exemption was advanced by Erie had been determined adversely to Erie by the Supreme Court in *State of New Jersey et al.* v. *State Board of Tax Appeals,* 134 *N. J. L.* 34; 45 *Atl. Rep.* (*2d*) 599, and that the Division was bound by this ruling of a higher tribunal. Although this body is not concluded by its former determination, *Continental Purchasing Co., Inc.,* v. *City of Newark,* 18 *N. J. Mis. R.* 204; 12 *Atl. Rep.* (*2d*) 133, the Supreme Court's ruling having been since affirmed by the Court of Errors and Appeals in *State of New Jersey et al.* v. *State Board of Tax Appeals,* 135 *N. J. L.* 481; 52 *Atl. Rep.* (*2d*) 852, the tenet followed by the Division in the 1945 case is even more firmly established as a standard to be followed in the instant appeal.

It being the judgment in the 1945 case that the appeal be dismissed, the instant appeal will also be dismissed.

### MAIN STEM AND SECOND CLASS PARCELS.

No extensive comment is necessary in disposing of the appeal by Erie from the valuations of Class I (main stem) parcels. The statute, *R. S.* 54:29A–17; *N. J. S. A.* 54:29A–17, provides that the Director shall ascertain the true value of railroad property according to the classes defined in the statute. One of the classes, the value of which is to be determined, is "the length and value of the main stem of each railroad and the length of such main stem in each taxing district."

There are twenty-one separate parcels constituting the main stem of the Erie Railroad Company from its terminus at the bulkhead line at the foot of Pavonia Avenue to the point where it crosses the westerly boundary line of Jersey City. However, it is apparent from a reading of the statute, that it is not necessary for assessment purposes that the "length" of the main stem in a particular taxing district be divided into parcels and that a value be established relative to each parcel. See *Pitney* v. *Kelly, State Tax Commissioner,* 21 *N. J. Mis. R.* 405; 34 *Atl. Rep.* (2d) 547. As stated by Mr. Fryer for the state: "In the valuation of main stem land, the main stem is assessed as a unit from the beginning of the line * * * to the state line * * * and the land is so considered as a continuous strip of land and it is valued that way—that is, assessed as one unit."

The Director properly valued these lands in the physical condition in which they were held by Erie, taking into consideration work done on the land, such as clearing, grading and grubbing. See *Borough of Emerson* v. *State Board,* 6 *N. J. Mis. R.* 326; 141 *Atl. Rep.* 23. In addition, he ascribed to these parcels a factor of value inherent in them by reason of the particular purpose which they served, namely, as the right-of-way of a going railroad company.

Erie's witnesses ignored the foregoing considerations necessary for the determination of true value. They gave individual values to the individual parcels and these values were based on either or both of the following premises: (1) so-called "comparable sales" and (2) valuations established

by these witnesses for adjoining Class II lands. An analysis of the testimony indicates that the properties that were the subject-matters of the so-called "comparable sales" were not in similar use at all. Additionally, both experts for the Erie admitted that they had arrived at their opinions of value without considering the main stem as a running whole from the terminal to the border line where it leaves the State of New Jersey. Nor did they estimate what the various parcels of main stem forming "a narrow strip of land, with valuable easements annexed to it, adapted to railroad uses" would "bring in the market." *Central Railroad Co.* v. *State Board of Assessors*, 49 *N. J. L.* 1; 7 *Atl. Rep.* 306.

From an examination of the testimony, proofs and exhibits we are forced to two conclusions: (1) that the Director assessed these lands in the actual physical condition as held by the owner (*State Board of Assessors* v. *Central Railroad of New Jersey*, 48 *N. J. L.* 146; 4 *Atl. Rep.* 578; *Williams* v. *State Board of Assessors*, 51 *N. J. L.* 512; 18 *Atl. Rep.* 750; *Pitney et al.* v. *Kelly*, 21 *N. J. Mis. R.* 405; 34 *Atl. Rep.* (2d) 547; *State* v. *State Board of Tax Appeals*, 134 *N. J. L.* 34; 45 *Atl. Rep.* (2d) 599; *affirmed*, 135 *N. J. L.* 481; 52 *Atl. Rep.* (2d) 852), but that the experts for appellant did not so value them; (2) the Director, following an established method that has been in existence in the railroad taxing division of the state since 1884, properly considered these parcels of land as an integral part of the main stem from the standpoint of their "contribution to the value of the main stem as an entirety" but that the experts for appellant did not so consider these parcels. *Central Railroad Co.* v. *State Board of Assessors*, 49 *N. J. L.* 1 (at *p.* 5); 7 *Atl. Rep.* 306; *Central Railroad Co.* v. *Thayer-Martin*, 114 *N. J. L.* 69 (at *p.* 75); 175 *Atl. Rep.* 637 (at *p.* 639); but that the experts for appellant did not so value them.

For the reasons stated, this portion of the appeal by Erie with respect to main stem parcels will be dismissed.

We will subsequently consider all appeals relating to Class II lands together.

Jersey City filed its complaint and appeal seeking increases in assessments on certain Class II structures (Nos. 1 to 18)

and on the Class II lands (parcels 1 to 52). The city contends:

(1) As to Class II structures—that the assessments are less than true value in contravention of article 4, section 7, paragraph 12 of the state constitution, *N. J. S. A.;* that the assessments are contrary to law in that: (a) the structures were valued separately and their values were not based on the actual condition of the property on the assessing date and (b) they were made on the basis of the original cost of the structures less an arbitrarily determined sum for depreciation and obsolescence.

(2) As to Class II lands—that the assessments are less than "true value" and were determined under illegal and erroneous formulae and not by "uniform rules," thus contravening article 4, section 7, paragraph 12 of the state constitution, *N. J. S. A.;* the assessments are illegal, erroneous and contrary to law and that in the making of the assessments the Director failed to value lands in the actual condition in which they were held by Erie on the assessing date.

## STRUCTURES.

In support of its contention that the assessments of certain structures were too low, Jersey City offered proof through its witness Hugh J. Phillips, whose exhibits were based upon "reproduction cost new, less depreciation." After satisfying himself as to the various quantities of materials that go to make up each structure, the witness "applied the labor and material prices as of the assessing date to each type of material used in the construction of each individual structure."

We are not impressed with certain aspects of the "reproduction cost new" figures testified to by the city's expert. For example, in his cost calculations, the witness employed the scale of wages for union labor rather than for railroad labor, the former being admittedly higher than the latter. But the probative effect of these figures is somewhat dimmed by the observation that in the case at bar practically all construction was accomplished by the use of railroad labor.

As to the depreciation factor the opposing estimates of the experts for Erie and Jersey City are in wide disagreement. As to ten of the eighteen structures the depreciation factor testified to by Mr. Sobbot (Erie) was more than double that applied by Mr. Phillips (city). As to three of the remaining eight structures Sobbot's estimate was almost double Phillips'. However, we cannot attach great weight to the depreciation factor testified to by the city's expert, as nothing more than "physical deterioration" was considered. Elements of functional and economic obsolescence, each of which is requisite in a proper determination of depreciation, are ignored.

Aside from the relative weight to be attached to the figures certified to by the opposing witnesses, there is, perhaps, a more fundamental basis for our conclusion of value as to these items under appeal. We refer to the basic inadequacy of the "reproduction cost less depreciation" approach as an exclusive method in determining true value. It is true that this approach to the sound value of a structure or an improvement may under certain circumstances help the witness and the court to arrive at true value and this has met with judicial approval. In *Village of Ridgewood* v. *State Board of Tax Appeals*, 129 *N. J. L.* 121; 28 *Atl. Rep.* (2d) 303, it was stated: "Original cost, cost of reproduction, depreciation and the like, are pertinent incidents" but that they "do not control the taxable value."

In *Schetty* v. *Jersey City*, 18 *N. J. Mis. R.* 37; 11 *Atl. Rep.* (2d) 18, it is stated: "Testimony that is based exclusively upon reproduction cost and disregards selling price carries little weight." See, also, *Central Railroad Co.* v. *State Board*, 49 *N. J. L.* 1; 7 *Atl. Rep.* 306; *Turnley* v. *City of Elizabeth*, 76 *N. J. L.* 42; 68 *Atl. Rep.* 1094, and *Pitney et al.* v. *Kelly*, 21 *N. J. Mis. R.* 405; 34 *Atl. Rep.* (2d) 547. The testimony given by the witness for Jersey City in the instant appeal was practically the same as that commented upon by the court in *State of New Jersey* v. *State Board of Tax Appeals et al.*, 134 *N. J. L.* 34; 45 *Atl. Rep.* (2d) 599. The court held in that case that this type of proof, in substantiation of the appeal filed by Jersey City, was not "sufficient to sustain its claim" and "that the method employed

by Mr. Phillips did not comprehend the necessary consideration of the obsolescence and outmoded structures, and, at all events, it was questionable as to whether a good many of the structures would have been rebuilt at the then advanced costs of rebuilding them."

Our conclusion is that the proofs offered by Jersey City are not persuasive that the assessments of the structures complained of are not less than the true value as of the assessing date. This portion of the appeal with respect to second class structures will therefore be dismissed.

## CLASS II LANDS.

(Appeal of Erie—Parcels 1 to 26, 52.)
(Appeal of Jersey City—Parcels 1 to 52.)

*Re: Parcels* 40, 42, 43, 44, 45 *and* 50.

No appeal was taken by Erie but an appeal was taken by Jersey City with respect to these parcels, all of which are in what is referred to by the experts as the "backland" terminal of Erie. The assessment of each of these parcels is at the rate of $1,400 per acre. Experts for both Jersey City and Erie gave opinions of value with respect to these parcels in excess of the amount of the assessment, Jersey City experts testifying to acreage rates ranging from $2,600 to $4,000 and Erie experts testifying to an acreage rate of $1,500.

The Division of Tax Appeals is bound by the evidence adduced where all experts testify to opinions of value higher than the amounts of the assessment. See *Town of Kearney* v. *State Board of Taxes and Assessments,* 4 *N. J. Mis. R.* 834; 134 *Atl. Rep.* 620; affirmed by the Court of Errors and Appeals, 103 *N. J. L.* 699; 137 *Atl. Rep.* 919; *Long Dock Co.* v. *State Board of Assessors,* 86 *N. J. L.* 592; 92 *Atl. Rep.* 439; *Lawrence Township* v. *State Board of Tax Appeals,* 124 *N. J. L.* 465; 12 *Atl. Rep.* (2d) 244.

By reason of the foregoing the Division must of necessity increase the valuations of these parcels so that the assessment will reflect a per acreage rate of valuation of at least $1,500 instead of $1,400.

Judgments with respect to these assessments will be entered at an acreage rate of $1,500.

*Re: Parcel* 3.

The situation with respect to this parcel is similar to the situation affecting the foregoing Class II lands. Both Erie and Jersey City appealed from the assessment based on an acreage rate of $33,333. Experts for both sides testified to a valuation higher than the amount of the assessment. Mr. Morrison, for Erie, testified to a value based on an acreage rate of $35,000 and Mr. Stack, for Erie, testified to an acreage rate of $34,848.

The question remains as to the extent to which the assessment should, be increased on the appeal by Jersey City. Parcel No. 3 fronts on the south side of and abuts Hoboken Avenue, lying east of the New Jersey Junction Railroad, Parcel No. 4 is practically, contiguous to Parcel No. 3 and lies on the east side of the New Jersey Junction Railroad. But the northerly end of Parcel No. 4 instead of abutting Hoboken Avenue is approximately 300 feet south of the south line of Hoboken Avenue. With respect to Parcel No. 3 experts for Erie testified that the per acreage rate of valuation it contributed to the valuation of the terminal as a whole is the same as that contributed by Parcel No. 4. Three of the four witnesses for Jersey City testified to the same per acreage rate of valuation for parcels 3 and 4, their rates being $87,120, $90,000 and $94,000. The fourth witness for Jersey City testified to a higher per acreage rate of valuation for Parcel No. 3 ($98,000) than for Parcel No. 4 ($90,000).

Parcel No. 3 has an area of .015 of an acre and Parcel No. 4 has an area of .061 of an acre. Except for this difference in size, Parcels Nos. 3 and 4 are almost identical. They are both situate on the east side of New Jersey Junction Railroad, both are put to the same use by the owner and both form a part of the same terminal. The Division agrees with the five experts who testified that the contribution to the value of the entire terminal by each of these two parcels is the same.

Inasmuch as the assessment of Parcel No. 4 is being affirmed at its valuation based upon a rate of $70,000 per

acre, for reasons elsewhere stated, it is our judgment that the assessment of Parcel No. 3 should be increased to reflect a valuation at the rate of $70,000 per acre.

*Re: Parcels 1, 2, 4 to 39, inclusive, 41, 46 to 49, inclusive, 51 and 52.*

The general pattern of appraisal technique used by the experts for both Erie and Jersey City in the valuation of these Class II lands was as follows: All witnesses considered Parcels Nos. 5 to 19 as forming the "waterfront" portion and the remaining parcels under appeal, Nos. 1 to 4 and Nos. 20 to 52 as forming the "backland" or "supporting" portion of the Erie terminal. In arriving at their opinions of value all witnesses drew upon their general knowledge and experience. With respect to the valuation of the "backland" parcels all witnesses submitted schedules of sales of so-called comparable properties. With respect to the valuation of the "waterfront" parcels witnesses for Erie submitted schedules of sales of so-called comparable properties, whereas witnesses for Jersey City maintained that no properties comparable with the "waterfront" parcels had ever been sold, and therefore submitted no schedules of sales of properties alleged to be comparable with the "waterfront" parcels.

All witnesses agreed that there had been no sales of railroad property in railroad use in Jersey City, Hudson County, or in the New Jersey "port" for the past fifty years.

We are in accord with the principle followed by experts for Jersey City in not submitting schedules of "comparable sales" of waterfront properties. We are of the opinion that there have been no waterfront properties comparable to the waterfront portion of the Erie terminal sold within a sufficient period of time to indicate a basis of value to be applied to this case. As stated by a witness for Jersey City, the waterfront properties that have been sold were not "comparable enough in order to be used as a proper basis of valuation in and of themselves" and this was due to "their size, shape and availability for different uses, and specifically not being available for railroad use." The waterfront sales that have taken place between 1938 and January 1st, 1945, and with reference

to which testimony was adduced, do not affect any properties which are sufficiently comparable to be used as a standard of valuation for these Erie Railroad waterfront terminal lands. *Laing* v. *United New Jersey Railroad and Canal Co.,* 54 *N. J. L.* 576; 25 *Atl. Rep.* 409.

As to the "backland" parcels, witnesses for Jersey City were all of one mind in their criticism of the comparable sales used by witnesses for Erie to support their valuation of "backland" properties, and with this view the Division agrees. However, the criticisms leveled by witnesses for Jersey City, can be leveled with equal force at their own "backland" schedules and the principles employed by them in arriving at their opinions of true value of these parcels. Properties, the sales of which are quoted by witnesses for Jersey City, are equally as deficient in similarity as to utility, size and location as are the properties, the sales of which are quoted by Erie witnesses. In fact, a number of sales quoted by witnesses for Jersey City are the same sales as are quoted by witnesses for Erie.

An interesting phase of testimony, new to the record in railroad appeals, was introduced at the hearings by witnesses for Jersey City. The opinions of value of these witnesses for the current assessing date were about 20% higher than their opinions of value for the assessing date of the prior year. This phase of testimony consisted of a series of studies, schedules relating thereto, twenty-one in number, being marked JCV-7 to JCV-27. The schedules covered a wide range of subjects, among them being: population statistics for Jersey City, Hudson County, State of New Jersey, New York City and the United States from 1790 to 1945; tabulation of Home Owners' Loan Corporation properties in the State of New Jersey; industrial space vacancy and rent comparisons for various periods from 1933 to 1945; vacant land sales and resales; elevator apartment house sales and resales; upward trend of Jackson Avenue store rents; vacancy survey, Monticello Avenue; elevator apartment house rent and vacancy comparisons; etc. The information contained in the exhibits was submitted with the understanding that it was subject-matter considered by the experts, but that it did not

constitute proof of the facts therein set forth. This restriction did not apply to certain comparable sales included in the exhibits, which comparable sales were evidential by reason of *R. S.* 2:101–1; *N. J. S. A.* 2:101–1.

When asked how these exhibits had affected his determination that there had been an increase in the values of the properties under appeal between January 1st, 1944, and January 1st, 1945, one expert stated: "Well, those were just cumulative factors which * * * supported my conviction that there had been a general increase in the valuation of real estate * * *. Those were just cumulative factors that helped indicate to me that there had been an increase in the general real estate market." None of the witnesses stated how the data and information contained in any of these twenty-one exhibits definitely pointed to an increase in value of the railroad properties under appeal.

With respect to this testimony concerning these exhibits the Division has determined that it is without probative force as far as the value of railroad properties is concerned.

It will thus be seen that other than their "general knowledge and experience" witnesses for Erie base their opinions of value solely upon the comparable sales quoted with reference to both "waterfront" and "backland" parcels. And the witnesses for Jersey City had no basis for their valuation of "waterfront" parcels other than their "general knowledge and experience" and the study of trends already commented upon. As to "backland" parcels witnesses for Jersey City had only comparable sales supplemented by their "general knowledge and experience" as their basis for value.

The type of comparable sales considered by experts for both appellants does not meet the standard laid down by the Court of Errors and Appeals in *Laing* v. *United New Jersey Railroad and Canal Co.*, 54 *N. J. L.* 576; 25 *Atl. Rep.* 409, wherein it was held that there must be "substantial similarity" between the properties, that is, enough similarity as to "admit of reasonable comparison." On this point the court said:

"Generally, in this and other states (*Lewis, Em. Dom. Par.* 443), evidence of sales of land in the neighborhood is competent on an inquiry as to the value of land, and if the pur-

chases or sales were made by the party against whom the evidence was offered it might stand as an admission. *Wyman* v. *Railroad Co.*, 13 *Metc.* (*Mass.*) 316. But such testimony is received only upon the idea that there is substantial similarity between the properties. The practice does not extend, and the rule should not be applied, to cases where the conditions are so dissimilar as not easily to admit of reasonable comparison, and much must be left to the discretion of the trial judge, in the determination of the preliminary question, whether the conditions are fairly comparable. *Chandler* v. *Aqueduct Corp.*, 122 *Mass.* 305."

The court in *Long Dock Co., Pros.,* v. *State Board of Assessors et al.,* 89 *N. J. L.* 108; 97 *Atl. Rep.* 900; *affirmed,* 90 *N. J..L.* 701; 101 *Atl. Rep.* 367, considered sales of lands in the "'business' section" of Hoboken and Jersey City as evidential but recognized the principle laid down in *Laing* v. *United New Jersey Railroad and Canal Co., supra,* stating, "what is looked for is substantially similar conditions." The comparable sales listed and testified to by the experts seem to be of that type that caused the Supreme Court in *Colonial Life Insurance Company of America* v. *State Board of Tax Appeals,* 126 *N. J. L.* 126; 18 *Atl. Rep.* (2d) 625, to comment that "evidence of 'comparable sales' is ofttimes of questionable force and is rarily, if ever, conclusive."

As opposed to the principles of appraisal followed by experts for Erie and Jersey City, testimony in behalf of the state indicates that the terminal lands were valued "as a whole, the entire tract." As Mr. Fryer for the state remarked, the Director was "not concerned with separate valuations of the parcels in the terminal" and that any sub-division that might be made depends upon "the value of the tract as a whole."

It is true that all witnesses for Erie and Jersey City asserted that they valued the terminal as a whole and then allocated proportionate values for the various parcels into which the terminal was divided, ascribing a higher unit of value to the "waterfront" parcels than to the "backland" or "supporting" parcels. But none of the witnesses in valuing the terminal as a whole considered it from the standpoint of its contribution of value as a waterfront terminus "as—

sembled and peculiarly adaptable" to the business the terminal serves. See *Long Dock Co.* v. *State Board of Assessors, supra.* Additionally, none of the witnesses for Erie or Jersey City considered the value of the terminal from the standpoint of its contribution to the total value of the trunk line railroad system of which it forms a part.

On the other hand, testimony produced by the state was persuasive that the method followed in reaching the figures of assessment was the same as the method that has in the past been uniformly approved by the courts of New Jersey. Director Walsh was insistent that the general method followed by his department, being the method sustained by the courts in the past, had been followed by him in the making of the assessments complained of herein.

We should not disturb the assessments levied by the Director in the absence of "palpable error." *Central Railroad of New Jersey* v. *State Board of Assessors,* 49 *N. J. L.* 1; 7 *Atl. Rep.* 306. Before we can reduce, alter or modify the assessments we must determine, as did the Supreme Court in *United New Jersey Railroad and Canal Co. et al.* v. *State Board of Taxes and Assessments,* 103 *N. J. L.* 33; 134 *Atl. Rep.* 669, that "the testimony of the prosecutors must so preponderate as to overcome the judgment of the State Board of Taxes and Assessment and the testimony that supports it."

The question is, then, as to whether or not there is enough weight to the testimony offered by Erie which on the one hand contends that the assessments are too high or by Jersey City which on the other hand contends that the assessments are too low for us to determine that there was "palpable error" in the making of these assessments being attacked. We think that this question must be answered in the negative.

Our determination as to the assessments is the same as stated by the Supreme Court in *Central Railroad of New Jersey* v. *State Board of Assessors, supra:*

"We can perceive nothing in the facts before us that would justify us in interfering with valuations of this case. We do not consider that we have the right to alter or annul any of the proceedings of this body of officers except for palpable error; for it is not to be overlooked that the statute in ques-

tion expressly declares that these assessors 'shall be entitled to use their personal knowledge and judgment as to the value of the property'—a capacity with which this court is not endowed by the legislature."

For the reasons stated, the respective appeals from the assessments of these parcels will be dismissed.

Some mention perhaps should be made relative to the contentions of unconstitutionality made by both Erie and Jersey City. These contentions were not argued at the hearing but in any event we are not qualified to pass upon them. *Schwartz* v. *Essex County Board of Taxation et al.,* 129 *N. J. L.* 129; 28 *Atl. Rep.* (*2d*) 482.